## SNOWDEN *v.* WATERMAN & COMPANY.

1. A vendee of personal property, by making a personal examination and inspection of the same before the purchase with the view of determining for himself the quality and condition of the property, does not thereby waive an implied warranty by the vendor that the article sold is merchantable and reasonably suited to the use intended; and the vendee can maintain a suit for such breach of the warranty growing out of a latent defect which could not, in the exercise of due caution, have been detected; and this is true notwithstanding the vendor was ignorant of the existence of such defect.

2. In a suit for damages growing out of a breach of an implied warranty in the sale of personalty, it is error for the court to admit testimony, over the objection of the defendant's counsel, which tends to show an item of expense incurred by the plaintiff, in consequence

of such breach, that is not set forth in the petition as constituting any part of the damages sought to be recovered.

3. Where a case is closely contested on a material and vital issue of fact which plaintiffs seek to establish from other facts and circumstances proved in the case, it is error for the court to charge the jury that they can infer from such facts and circumstances the existence of the main fact in issue.

4. Where one purchases a lot of mules some of which are infected with a contagious disease that they soon afterwards, without fault of the purchaser, communicate to others in the lot; and the disease is of such a nature as to render the stock infected with it absolutely worthless, such a defect is covered by an implied warranty; and the vendee, in a suit for damages growing out of a breach of such warranty, is entitled to recover the purchase-price of all the stock thus lost, together with expenses that he has properly and reasonably incurred in quarantining stock to prevent a spread of the disease and in doctoring, and in otherwise taking care of them.

5. It is error in the court to refuse to charge a special written request made by defendant's counsel, which is legal and adjusted to a distinct matter in issue, involving plaintiffs' right to recover, although the principle of such request may be covered in general and abstract terms by other instructions of the court; the case being a close one under the evidence, and its pressure being to a considerable extent upon the matter as to which the request was made.

6. Other than as above indicated, there was no material error in any of the grounds of the motion for a new trial.

Argued June 8, — Decided July 19, 1898.

Complaint for damages. Before Judge Eve. City court of Richmond county. November term, 1897.

*J. R. Lamar* and *E. B. Baxter,* for plaintiff in error.
*Fleming & Alexander* and *P. J. Sullivan,* contra.

LEWIS, J. Waterman & Co. sued Snowden for breach of implied warranty as to the soundness of certain live stock sold by defendant to plaintiffs, the suit being brought by attachment upon the ground that defendant resided out of the State. In the petition and the amendment thereto it was alleged, that the defendant sold plaintiffs a car-load of stock for the sum of $2,035, which sum was paid in cash by plaintiffs; that the sale of the stock was made without any warranty whatever, but under a general warranty implied by law as to soundness, etc.; that after the delivery of the stock to Waterman & Co., and without fault on their part, the disease of glanders, or other similar deadly disease, appeared in said car-load of stock, and

rendered the same wholly and utterly worthless, and that the disease had already infected the stock before they were sold to Waterman & Co., and at the time of the sale they were unsound and utterly worthless, but that this defect was not then patent; that Waterman & Co. had been to an expense of about $500 in doctoring and keeping said stock by reason of its diseased condition; and that the defendant at the time of said sale knew or ought to have known of the defects in the stock. The defendant answered, admitting the sale of the stock and payment therefor as alleged, but denied that they were infected with glanders, and alleged that if they ever did become so infected, it was after the sale, and while they were in the custody of the plaintiffs, defendant being in no way in fault. By amendment to his answer the defendant alleged, that if the stock was so infected as charged at the time of sale, the fact was wholly unknown to him, and before plaintiffs accepted the stock they personally inspected them for the purpose of discovering if they were sound and merchantable; that they relied on their own judgment as to their condition in making said purchase, and thereby waived the implied warranty against latent defects. The defendant also traversed the ground of the attachment. The jury returned a verdict finding against the traverse, and further finding the sum of $2,035 in favor of the plaintiffs. The defendant made a motion for a new trial on several grounds which were overruled, and he excepted.

1. Among the grounds of the motion for a new trial was alleged error in refusing to charge the jury the following request of counsel for defendant below: "Where the seller himself has no knowledge of a defect in the thing sold, and where the seller is free from fraud, the law implies no warranty of quality upon the sale of a specific article then present and actually inspected and examined by the purchaser at and before completing the sale. If you believe from the evidence that Snowden was not guilty of any fraud in the sale of the mules, and did not know or suspect that they were affected with glanders or other disease, and that Waterman & Co. during the progress of the negotiations actually inspected and examined the mules for themselves, and relied upon their own judgment, the law

implies no warranty upon which Waterman & Co. can recover after the sale was actually executed by the delivery of the mules to Waterman & Co., and the payment of the money by Water-man & Co. to Snowden." When this case was here before (100 *Ga.* 588), it was decided by this court that "A breach of an implied warranty that goods sold are 'merchantable and reasonably suited to the use intended' may arise when the goods, because of a defect which could not in the exercise of due caution be detected, are totally useless and worthless, though in point of fact the seller was ignorant of the existence of such defect." It is not contended in this case that there was any express warranty by the vendor; but section 3555 of the Civil Code declares that in all cases, unless expressly or from the nature of the transaction excepted, the vendor warrants that the article sold is merchantable, and reasonably suited to the use intended. The decision above cited settles the question that the ignorance of the vendor of a defect which renders the goods totally worthless can not relieve him of his obligation arising under this implied warranty imposed by the statute. The same section of the code cited declares that, if there is no express covenant of warranty, the purchaser must exercise caution in detecting defects. It is not contended that the plaintiffs could by the exercise of any sort of diligence have detected when they purchased these mules that they were infected with glanders, or other deadly disease. It is insisted, however, by the plaintiff in error, that inasmuch as they made a personal inspection and examination of the stock before purchasing, this was equivalent to buying upon their own judgment, and amounted to a waiver of the implied warranty. The law imposes upon the vendee the duty of exercising caution in detecting defects; and hence it is a well-established rule, that where the defect is patent, or could have been ascertained by the exercise of diligence, there can be no recovery upon the ground of an implied warranty. In all such cases the doctrine of caveat emptor applies. But in cases of latent defects, the existence of which can not be ascertained by an examination of the property, the law protects a purchaser by imposing upon the vendor an implied warranty, whenever

the defect is of such a nature as to render the article sold unsuited to the use intended. In cases of latent defects, therefore, the doctrine of caveat venditor applies. To contend that when a purchaser, in the exercise of the caution imposed upon him by the statute, makes a personal examination of the property before trading, in order to ascertain if any patent defects. exist, he thereby waives the right to plead an implied warranty growing out of a latent defect, would be contrary to the spirit,. reason and letter of the law. In the case of *Miller* v. *Moore,.* 83 *Ga.* 684, it was decided by this court that inspection by the vendee of goods before acceptance will exclude from the warranty all patent defects, but it will have no influence on those which are latent. It is true one of the plaintiffs stated in his. testimony that he purchased on his own judgment, but he also. stated that he waived nothing; and a fair construction of his evidence on this point is, that he simply meant, so far as the condition and quality of the mules appeared at the time of the purchase, he bought upon his own judgment, but that he did not mean thereby to waive a fatal defect so latent in its nature that it could not be disclosed by a personal examination of the property. We think, therefore, that the court did right in refusing· to give in charge the above request.

2. Counsel for defendant, upon the trial of the case, objected to testimony showing what were the expenses incurred by plaintiffs in having to isolate stock, growing out of the fact that they had sent six of their mules bought of defendant, directly after the purchase, with other stock of theirs, to another· section of the State; and after learning that some of the mules. remaining on hand were infected with a deadly disease, fearing· that these six sent off were likewise infected, they incurred an expense of eight or nine hundred dollars in keeping them isolated so as not to spread the disease. The only allegation in the petition with reference to any expense incurred by plaintiffs is that about $500 were expended in doctoring and keeping the stock by reason of its *diseased condition.* It appears from the testimony that there were twenty-two mules purchased of defendant. Directly after this purchase six of these mules. were sent from Macon further south with other stock owned by

the plaintiffs. These six mules never became infected with
the glanders, but plaintiffs, fearing that they had in their sys-
tems the seeds of the disease, kept them and the other stock
shipped with them isolated, and would not put them upon the
market for sale, or otherwise use or dispose of them until all
·danger from the disease had disappeared. The sixteen mules
that remained on their hands in Macon developed glanders, or
some other deadly disease which was infectious. All these
mules were lost in consequence of the disease. They either
·died from the disease, or were killed in consequence of it to
prevent its spread. The veterinary surgeon's bill, and other
·expenses incurred in doctoring and isolating these sixteen
·mules, by reason of their diseased condition, amounted to be·
tween four and five hundred dollars. Manifestly this was the
expense sued for by the plaintiffs in their declaration, which
has no reference whatever to expenses incurred in attending to
that portion of the stock bought which had never become dis-
·eased, and also in attending to other stock of the plaintiffs not
included in the purchase. It was, therefore, manifest error
·for the court to admit testimony showing what such expenses
were. The only reply made to this by counsel for defendants
in error was, that the admission of this testimony worked no
harm to the defendant below, for the reason that the amount
of the verdict found by the jury could have been reached by
them without including this additional expense of eight or
nine hundred dollars. It is contended that the verdict was
reached in this way: The testimony shows that $2,035 was
paid for 22 mules, or $92.50 each; sixteen of them died from
.glanders, entailing a loss of $1,480; $416 was expended in
taking care of the sixteen mules that died, making a total loss
·of $1,896; interest on this last amount from the time of the
loss to the date of the verdict would more than equal the differ-
·ence between the $1,896 and the amount of the verdict. The
answer to this, however, is that the jury by their verdict ex-
pressly stipulated that it was without interest; and in order
to reach their finding they necessarily had to include some
·other item of damages besides those sustained by the plaintiffs
·and sued for in their declaration.

3. Another ground in the motion is, that the court, after giving in charge the following request: "I charge you that the plaintiffs can not, in an action for breach of warranty, recover the value of any stock which was not infected at the time of the sale and warranty, but which became infected afterwards, even though that infection resulted from contact with a portion of the stock which was infected at the time of the sale," qualified the same by charging as follows: "I give you that with the qualification I gave you before, that if, after the disease became apparent, the plaintiffs exercised all ordinary care and diligence in preventing the spread of the disease and its being communicated to others not infected, then they have complied with all that the law requires; and if the disease developed a short time after the sale and after the exposure, then you can infer from these facts the existence of the seed in those then developed." Error is assigned on this qualification of the charge, upon the ground, first, that it contained an expression of opinion on the evidence. A material issue between the plaintiffs and defendant was whether or not this stock, or any portion of it, was infected with the disease at the time of the purchase; it being contended by the plaintiffs on the one hand that it was, and by the defendant on the other, that it was not, and that if the stock had glanders the disease was contracted after the sale. If the disease developed a short time after the sale, that was a circumstance for the jury to consider in determining the question for themselves as to whether or not the seeds of the disease existed when the sale was made. But as to whether or not the jury could infer from these facts and circumstances the existence of the main fact in issue was a question for them to decide. The expression of the court, if not an opinion as to what had been proved, certainly was an opinion upon the weight which the jury could give to circumstantial evidence in the case in establishing the main fact in issue.

4. It was further contended by counsel for plaintiff in error, that the court should have given the above request without any qualification at all. The charge requested was not a correct measure of damages; for it limited the jury to a consideration

only of damages to such of the stock as had the disease at the time of the sale, and precluded them from considering damages resulting to the other mules not infected at the time of sale, but which caught the disease after the sale from those that were diseased when the purchase was made.  All damages which accrue as a direct and natural consequence of a breach of warranty, whether express or implied, are recoverable.  A natural consequence of stock infected with glanders is to communicate it to all other stock with which the diseased animal comes in contact.  In 2 Sedgwick on Damages, § 769, it is declared:  "Where animals sold are warranted free from disease, loss through communication of disease to other animals of the purchaser may be recovered.  It is not necessary to the recovery of such damages to show that the vendor knew that the diseased animal was to be placed with others belonging to the plaintiff.  The defendant is presumed to anticipate that the animals he sells will be placed with others as a natural consequence of his act.  The expense of nursing and curing other animals, which contract disease from those sold, may be recovered."  If any of the stock sold, therefore, was infected with a deadly and contagious disease, which was communicated to other stock of the plaintiff, whether before or after the sale, it would give a right of action for damages for all the stock of the plaintiffs that had thus been lost from the effects of the contagion; provided the plaintiffs, by the exercise of ordinary care, could not have avoided the injury thus sustained.  Plaintiffs would further be entitled to recover not only for such loss, but also any expenses that were properly and reasonably incurred in taking care of the stock, trying to cure them, and endeavoring to prevent them from spreading the disease to other animals.  While damages resulting from a spread of the disease and its communication to those animals not infected at the time of the sale are not specifically set forth in the petition, yet the case on the trial seems to have been treated by both parties as if this matter was in issue.

5. Error is assigned upon the refusal of the court to charge the following request of defendant's counsel:  "If you believe that proper prudence required that each of the mules should be

isolated from every other in the suspected lot bought, it was the
duty of Waterman & Co. so to isolate them; and if, as a result
of failing so to isolate them, you find that the disease was spread
from one mule to the other, then I charge you that Waterman
& Co. can not recover for the damages occasioned by such spread
of the disease." We think this request should have been given.
It appeared from the testimony in the case, that the six mules
which were removed from the lot soon after the purchase never
contracted the disease. It would have been a most remarkable
coincidence, if at the time of the sale sixteen of the mules were
diseased and six were sound, for plaintiffs to have happened
to have selected from the lot, without any knowledge whatever
of the diseased condition of the stock, the six sound mules to
be shipped, and left the sixteen diseased ones on hand. It was
therefore contended with great force by the plaintiff in error,
that such a thing was impossible under the law of probabilities,
and that some at least of the sixteen mules must have been per-
fectly sound when sold. It was further contended that due
diligence required that the plaintiffs, as soon as they discovered
that any of the stock was infected with a contagious disease,
deadly in its nature, should have isolated the mules and kept
them separate, so as to prevent a spread of the disease. As to
what due diligence required, under all the circumstances of the
case, was a question of fact for the jury. No damages should
have been recovered that resulted from the negligence of the
plaintiffs. The specific charge requested was legal, and was
adjusted to a very material and distinct matter in issue. The
case was a close one under the evidence on this particular point,
and its pressure was upon the matter as to which the charge was
asked. In such a case this court has decided in *Metropolitan
Railroad Co.* v. *Johnson,* 90 *Ga.* 501, that the refusal to give
such a request in charge is ground for a new trial, although in
principle, and in general and more abstract terms, it may be
covered by other instructions given by the court.

Error was also assigned upon the refusal of the court to give
in charge the following request of defendant's counsel: "If you
find that proper prudence required that each mule should have
been separated from every other, and if you find from the evi-

dence that it was improper to allow them to run in a pen together, and that after Waterman & Co. suspected that the mules were infected with glanders they were allowed to remain together, and that by reason thereof the disease was communicated from one to the other, and thereby more mules died than would otherwise have died, then Waterman & Co. can not recover, even though they may have turned the matter over to a veterinary surgeon, who let the mules remain in a pen together without this individual separation or isolation." We do not think there was error in refusing this request as made, because it embodies the idea that if the spread of the disease was the result of plaintiffs' negligence, and thereby more mules died than would otherwise have been lost, then there could be no recovery at all. Of course this would not preclude a recovery for the loss of such of the animals as were infected with the disease at the time of the purchase, but would only prevent a recovery of such damages as were occasioned by a communication of the disease to others which were not infected at the time of the sale.

6. There were several other grounds in the motion, but we do not think they involve sufficient merit to require any consideration, except to say that, other than as herein indicated, there was no material error in any of the rulings of which complaint is made. *Judgment reversed. All the Justices concurring.*