31925. FITE *v.* McENTYRE.

DECIDED JULY 8, 1948. REHEARING DENIED JULY 29, 1948.

*R. F. Chance*, for plaintiff in error.

*Y. A. Henderson, Henry L. Barnett*, contra.

MacIntyre, P. J. ■ The petition in the instant case, while it may not be perfect or free from defects which might have been taken advantage of by a special demurrer based upon the proper

grounds, is not subject to a general demurrer. The action is essentially one for the breach of an implied warranty in law under Code § 96-301 (2), which is: "If there is no express covenant of warranty, the purchaser must exercise caution in detecting defects; the seller, however, in all cases (unless expressly or from the nature of the transaction excepted) warrants that . . 2. The article sold is merchantable, and reasonably suited to the use intended." The effect of a breach of the warranty provided by this section is set out in Code § 96-306 as follows: "A breach of warranty, express or implied, shall not annul the sale if executed, but shall give the purchaser a right to damages."

In *Snowden* v. *Waterman & Co.*, 100 *Ga.* 589 (28 S. E. 121), it was said: "The seller of personal property, in all cases, unless expressly, or from the nature of the transaction, excepted, warrants: . . second, that the article is merchantable and reasonably suited to the uses intended. [Code, § 96-301.] Each clause in the section cited provides for a separate and distinct warranty, and a breach of any one is a breach of the implied warranty of the law. . . If the article is totally worthless and useless, and the buyer, in the exercise of ordinary care, could not detect the defect, then there is·a breach of warranty under the second clause, and this too when the seller was ignorant of the existence of the defect which caused the article to be of no value. . . The petition, before it was amended, in effect alleged that the article sold was not merchantable and was not reasonably suited to the use intended, and was 'wholly and utterly worthless.' Therefore the court committed no error in overruling a general demurrer thereto."

When the same case was again before the Supreme Court of Georgia (*Snowden* v. *Waterman & Co.*, 105 *Ga.* 384, 31 S. E. 110) it was further stated: "Where one purchases a lot of mules some of which are infected with a contagious disease that they soon afterwards, without fault of the purchaser, communicate to others in the lot; and the disease is of such a nature as to render the stock infected with it absolutely worthless, such a defect is covered by an implied warranty; and the vendee, in a suit for damages growing out of a breach of such warranty, is entitled to recover the purchase-price of all the stock thus lost, together with expenses that he has properly and reasonably incurred in

quarantining the stock to prevent a spread of the disease and in doctoring, and in otherwise taking care of them . . [p. 385 (4)]. It is not contended in this case that there was any express warranty by the vendor; but section [96-301] of the Civil Code declares that in all cases, unless expressly or from the nature of the transaction excepted, the vendor warrants that the article sold is merchantable, and reasonably suited to the use intended. . . But in cases of latent defects, the existence of which can not be ascertained by an examination of the property, the law protects a purchaser by imposing upon the vendor an implied warranty, whenever the defect is of such a nature as to render the article sold unsuited to the use intended. In cases of latent defects, therefore, the doctrine of caveat venditor applies . . [p. 387]. All damages which accrue as a direct and natural consequence of a breach of warranty, whether express or implied, are recoverable. A natural consequence of stock infected with glanders is to communicate it to all other stock with which the diseased animal comes in contact. In 2 Sedgwick on Damages, § 769, it is declared: 'Where animals sold are warranted free from disease, loss through communication of disease to other animals of the purchaser may be recovered. It is not necessary to the recovery of such damages to show that the vendor knew that the diseased animal was to be placed with others belonging to the plaintiff. The defendant is presumed to anticipate that the animals he sells will be placed with others as a natural consequence of his act. The expense of nursing and curing other animals, which contract disease from those sold, may be recovered.' If any of the stock sold, therefore, was infected with a deadly and contagious disease, which was communicated to other stock of the plaintiffs, whether before or after the sale, it would give a right of action for damages for all the stock of the plaintiffs that had thus been lost from the effects of the contagion; provided the plaintiffs by the exercise of ordinary care, could not have avoided the injury thus sustained. Plaintiffs would further be entitled to recover not only for such loss, but also any expenses that were properly and reasonably incurred in taking care of the stock, trying to cure them, and endeavoring to prevent them from spreading the disease to other animals." (p. 391.)

The foregoing quoted excerpts from opinions of the Supreme

Court of this State we take to be the law to which the courts of this State are committed in the class of cases within which the present case falls. Under these excerpts, it is seen that the law under Code § 96-301 (2) implies a warranty that the purchased animals are free from latent contagious disease which would render them totally worthless, in the absence of an express or implied waiver of the warranty. The essential elements of a damage action for the breach of such a warranty then are: (1) an executed sale of animals; (2) the absence of a waiver of the warranty implied by the law; (3) breach of the warranty by the existence of the contagious disease in the animals at the time of the sale; (4) that the defects were latent and not discoverable by the exercise of ordinary care on the part of the buyer; (5) that the animals are totally worthless as a result of the disease (total worthlessness supplanting a stipulation that the animals are unmerchantable and not reasonably suited to the use intended); (6) the damages accruing as a direct and natural consequence of the breach; and (7) that the buyer exercised due diligence in avoiding the consequences of the breach. Applying these essentials to the petition in the present case, we see: first, the executed sale set out in paragraph three; second, affirmation that the sale was made under the implied warranty in paragraph four; third, breach of the warranty by the existence of the disease in the hogs at the time of delivery in paragraph five; fourth, the defects were latent and not discoverable by the exercise of ordinary care in paragraph five; fifth, the animals were totally worthless because 60 of them died from the disease and had to be buried to prevent the spread of the disease in paragraphs six and nine; sixth, the damages accruing as a direct and natural consequence of the breach are alleged in paragraphs six, eight and nine; and seventh, that the plaintiff was reasonably diligent in avoiding the consequence of the breach is alleged in paragraph six, eight and nine. The petition therefore alleged a cause of action under the rule of the *Waterman* cases, supra; and it was not subject to a general demurrer.

It is true, as the defendant contends, that a general demurrer admits only facts properly pleaded, and does not admit conclusions. He argues that the petition is based upon a conclusion which renders its allegation of the essential elements of the cause

of action defective in that the allegation of the petition—that the hogs infected with a contagious disease were unfit for the use intended—is unsupported by allegations of what the use intended was and that the petition does not allege that the hogs were totally worthless, and that the petition must be construed most strongly against the pleader to hold that they were therefore merchantable. However, it will be noted that the petition alleges that the plaintiff is "engaged in the business of raising hogs for the market." On demurrer the petition must be considered as a whole; and if the hogs were inflicted with the infectious and contagious disease, as alleged in the petition, from which disease one of the hogs died on December 11, the next day after delivery to the buyer on December 10, 1945, with which two days later about one-fourth of the hogs were sick, from which two died on December 15, from which said hogs continued to die each day thereafter until 60 of them had died and from which said hogs died from two to five a day the exact number and date said hogs died being unknown to petitioner for the reason that he did not keep a record of the day and number that died, but from which all of them died between the 11th day of December, 1945, and the 28th day of January, 1946, and as a result of which disease all of the carcasses were buried to prevent the spread of the disease or transported to Atlanta for examination to determine the nature of the disease which caused the death of the hogs, it seems to us that this demands a conclusion as a matter of law that the hogs were not merchantable and reasonably suited to the use intended and, even further, demands a conclusion as a matter of law that the hogs were totally worthless and unsuited for any purpose by any person whatsoever. If the evidentiary or preliminary facts alleged in a petition demand a conclusion that all the essential elements of a cause of action are set forth, it is sufficient as against general demurrer for the conclusion is good in law. The petition in the instant case alleged evidentiary or preliminary facts, as set forth above, which we think, if proved, demanded a conclusion which is good in law that the hogs which perished from the disease and were buried to prevent its spread or shipped to Atlanta for analysis were totally worthless and that the petition was not subject to the objection that some of its essential allegations are mere conclusions not good in law.

The arguments of counsel for the defendant that for all that appeared from the petition, the plaintiff may have purchased the hogs to make lard for other than human consumption or to feed them to wild animals are also without merit.

■ The defendant in his argument on the second ground of his demurrer urges that the petition nowhere alleges the name of the infectious and contagious disease with which the hogs were alleged by the plaintiff to be infected; that, while the plaintiff alleged in the petition that he did not know the name of the disease, it appeared on the trial of the case that the plaintiff did know the name of the disease; that the plaintiff should have been required to allege the name of the disease because, by the plaintiff being allowed to keep the defendant ignorant of the disease, the defendant was unable to intelligently prepare his defense; and that the allegation that the disease was infectious and contagious is a conclusion unsupported by other allegations of fact.

"It is . . necessary that all of these elements [of the cause of action] should appear in the averments of the petition. The absence of any one of them would make the petition substantially defective. The presence of all [of them] would make the petition good in substance. If in the allegations in reference to any of these elements the averments of the petition do not deal with the subject with that particularity which would be required to put the defendant on notice of what it had to meet, such defects can be taken advantage of by special demurrer, and would be fatal in the absence of an appropriate amendment." *Pierce* v. *Seaboard Air-Line Ry.*, 122 *Ga.* 664, 666 (50 S. E. 468). And "where a special demurrer is well taken, and the court overrules it, the error is prima facie harmful, but not necessarily so. If the reviewing court can with reasonable certainty say that no harm or injury has resulted to the complaining party, a new trial will not be granted, notwithstanding an error of this nature may appear in the record." *Wrightsville & Tennille R. Co.* v. *Vaughan,* 9 *Ga App.* 371, 372 (5) (71 S. E. 691).

Paragraph five of the petition alleges that the name of the disease was unknown to the plaintiff; however, paragraph nine alleges that the plaintiff employed veterinarians and also that he transported carcasses of hogs which had died with the disease to the State Veterinarian's Laboratory in Atlanta for analysis.

Even if it may be thus considered that the plaintiff refutes his own allegation—that he did not know the name of the disease—in his petition, as well as in the evidence in the case, it is alleged in paragraph six of the petition that the plaintiff went to the defendant and told him of the disease with which the hogs were suffering and that the defendant prescribed medicines for the illness. It would seem that the defendant was charged by the petition with notice of the disease and we do not think that it was error to overrule this ground of the demurrer. Conceding, however, but not deciding, that the information sought to be elicited by this special ground of the demurrer should have been given, it clearly appears that the defendant could not have been put to any disadvantage in preparing his defense by reason of the overruling of this ground of the demurrer because it appears from the evidence in the record that the defendant also had other hogs which suffered from the same disease, the name of which the defendant knew and which disease the defendant, being well versed in hog ailments, treated in his own hogs. It also appears from the evidence that the defendant was sufficiently put on notice of the name of the disease to cause to appear at the trial two expert witnesses, who were practitioners in the treatment of hog diseases, both of whom presented excellent evidence in his behalf. It therefore appears from the record that the defendant was already in possession of the information called for by the demurrer; and, assuming that the trial judge erred in not requiring the plaintiff to give this information on special demurrer, under the facts of the case we think that the error was harmless. See *Cline* v. *Nelson*, 46 *Ga. App.* 600, 605 (168 S. E. 70).

If the allegations of the petition in regard to the hogs being infected at the time of the sale and in regard to the communication of the disease to other hogs and their resulting death are proved, the conclusion that the disease with which they were alleged to be infected was infectious and contagious would be demanded as a matter of law; therefore, such allegation was not subject to the objection urged and this ground of the demurrer is without merit.

■ Ground three of the demurrer and the argument thereon attack paragraph six of the petition by objecting that nowhere in the petition is it averred that the first hog which died, died of

the contagious disease in question; and that consequently the plaintiff can not hold the defendant liable for the death of this hog without alleging the cause of his death. Paragraph six, as amended, alleges in effect that one of the hogs purchased from the defendant died on December 11, which was the next day after said hogs were delivered to the home or farm of the plaintiff, and that two days later about one-fourth of said hogs were sick from said infectious and contagious disease and unable to get upon their feet and two died on December 15. All that a special demurrer requires of a petition is reasonable definiteness and certainty, and it does not require that the pleader must indulge in needless particularities. It is true that the pleader must allege that the hogs died' from the disease in question, but the allegations of each paragraph and of the petition must be construed as a whole. So construing paragraph six, the entire theme of the paragraph, above set out, is that the hogs were sick and were dying of this particular disease. Conceding that the allegation as requested would have been more proper, such a trifling defect, when the entire context conveys the proper meaning and that meaning only, does' not form the basis for a meritorious special demurrer.

■ The defendant in special ground two contends 'that the court charged specifically the contentions of the plaintiff without in like manner stating the corresponding contentions of the defendant, and that this was bound to unduly emphasize the contentions of the plaintiff and give to them undue prominence. After reading the charge, we think it is patent that the judge merely stated to the jury in a narrative form what was alleged in the plaintiff's petition. The defendant's answer, except for admitting jurisdiction and admitting in paragraph 10 thereof that he refused to pay plaintiff's claim, either merely denied, or stated that for want of sufficient information he could neither admit nor deny, the allegations in all of the paragraphs of the petition. The judge charged with reference to the contentions in the answer, which alleged no affirmative or specific defenses, as follows: "Mr. Fite comes in and files an answer to the plaintiff's petition, and he admits that he is a resident of this county, and the remaining allegations of the plaintiff's petition, Mr. Fite, either denies them, or says that for want of sufficient information that

he can neither admit nor deny the allegations in the plaintiff's petition which he does not deny outright. Gentlemen, I have not undertaken to give you all the contentions of the parties with absolute faithfulness as to detail. You will have the pleadings out with you, which consist of the plaintiff's petition, and the amendment to the plaintiff's petition and the answer of the defendant. You may refer to these pleadings as often as you deem necessary in order to determine exactly what the contentions of the parties are." It will thus be seen that the court charged all of the contentions of the defendant which were contained in his answer, almost in the exact words of his answer.

"It is one thing to state what a party contends, and another and very different thing to state the law applicable to such contention." *Gledhill* v. *Harvey,* 55 *Ga. App.* 322, 327 (190 S. E. 61), and cit. "The pleadings are the chart and compass by which the judge is to guide the case. The defendant can not give the judge a chart to follow, and when the judge follows that chart reverse him for so doing." *American Surety Co.* v. *Smith,* 55 *Ga. App.* 633, 643 (191 S. E. 137). If the pleadings of the plaintiff are fuller than those of the defendant in elaborating his respective contentions, the natural consequence is that the court may devote more time in stating the pleadings and contentions of the plaintiff as set forth in his petition than in stating those of the defendant as set forth in his answer. This does not constitute an undue stressing of the contentions of the plaintiff where the court states fully and fairly the substance of both; and especially is this true where the court also instructs the jury that the pleadings will go out with the jurors and that they may refer to these pleadings as often as they deem necessary in order to determine exactly what the contentions of the parties are. *Boone Co.* v. *Owens,* 54 *Ga. App.* 379, 383 (187 S. E. 899).

■ Code § 96-301 in its entirety provides: "Implied warranty. —If there is no express covenant of warranty, the purchaser must exercise caution in detecting defects; the seller, however, in all cases (unless expressly or from the nature of the transaction excepted) warrants that—1. *He has a valid title and right to sell.* 2. The article sold is merchantable, and reasonably suited to the use intended. 3. He knows of no latent defects undisclosed." (Italics ours.)

The court charged this entire section including the words which we have italicized. The italicized portion is objected to on the ground that there is no issue involving title and that the charge on this subject was prejudicial error because it was not authorized by the evidence and therefore tended to mislead and confuse the jury. Even if the italicized part of the Code section was inapplicable, it would not require the grant of a new trial. The charge as a whole clearly instructed the jury that they should find for the plaintiff only if under the evidence they found that the hogs in question were not merchantable and reasonably suited to the use intended. *Battle* v. *Williford*, 160 *Ga.* 287, 288 (4) (127 S. E. 762). See also *Adkins* v. *State*, 137 *Ga.* 81 (6) (72 S. E. 897); *Booker* v. *State*, 183 *Ga.* 822 (4) (190 S. E. 356).

■ The presiding judge in general terms submitted to the jury the law applicable to a warranty implied by law and clearly instructed the jury that they should find for the plaintiff if, under the evidence, they found that there was no express warranty but only a warranty implied by law, which had not been waived, and that the hogs in question—to which he definitely referred in his charge—were not merchantable and reasonably suited for the purpose intended. This being the only issue involved, he was not required, in the absence of a proper and timely written request, to instruct the jury more definitely as to the contentions of the defendant. *Kimbrel* v. *Grow*, 39 *Ga. App.* 594, 595 (4) (147 S. E. 915). The charge, when considered in its entirety, embraced the general principles of law applicable to the facts of the instant case; and the charge was not erroneous for any reason assigned. If any amplification of the general principles which the charge contained had been desired it should have been made the subject of an appropriate and timely written request. *Tabor* v. *Macon Ry. & Light Co.*, 129 *Ga.* 417 (1) (59 S. E. 225).

The charge stated distinctly the issue which the jury was required to pass upon and it was not incumbent upon the judge to attempt a summary of the evidence or to state the issue more fully in the absence of such timely written request. *Mills* v. *Sanders*, 16 *Ga. App.* 298, 299 (2) (85 S. E. 207). The charge was neither misleading nor confusing, nor did it intimate or express an opinion on the part of the trial court. The criticism of the

charge made in grounds 1, 4, 5, 6, 7, and 8 of the motion for a new trial show no cause for reversal.

" 'The law allows [the trial judge] to refuse or grant new trials in the exercise of a legal discretion, but it does not give this court any discretion in the matter. It can only grant new trials where errors of law have been committed, or when the trial judge has abused his discretion in refusing a new trial.' " *Jackson* v. *State*, 56 *Ga. App.* 392 (1) (192 S. E. 630). "This court has repeatedly ruled that in the absence of legal error, it has no jurisdiction to interfere with a verdict supported by some evidence, although the verdict was against the preponderance of the evidence." *Wilson* v. *Barnard*, 10 *Ga. App.* 98, 99 (8) (72 S. E. 943).

In this case the evidence was contradictory and the verdict was authorized by some of the evidence. The trial judge, having overruled the motion for a new trial, and no error of law appearing, this court has no discretion in the matter of granting a new trial on the general grounds.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*