32179. MILWAUKEE MECHANICS INSURANCE
CO. *et al. v.* DAVIS *et al.*

DECIDED MARCH 18, 1949. REHEARING DENIED APRIL 1, 1949.

*Edgar A. Neely Jr., Neely, Marshall & Greene,* for plaintiffs. *Hewlett & Dennis, T. F. Bowden, Calhoun & Calhoun, Herbert Johnson, Ross Arnold,* for defendants.

MacIntyre, P. J. ■ The plaintiffs' demurrers, which were overruled and to which judgment exceptions pendente lite were filed, enumerated certain paragraphs of the defendants' answers and set forth certain reasons why all of the enumerated paragraphs should be stricken. Those paragraphs of the answers which were demurred to were in effect allegations of the defendants' affirmative defenses, and though the plaintiffs enumerated the paragraphs to be stricken, their demurrers were nothing more than general demurrers to, or general motions to strike, the defendants' affirmative defenses. The answers are not subject to the criticism that they set up new matter not controverting the petition, nor, though the action be upon the written contract of insurance, are the defenses subject to the criticism that they attempt to vary by parol the terms of an unambiguous written instrument, as we shall demonstrate in our discussion of the general grounds in another division of this opinion. The answers set up affirmative defenses which were good as against general demurrers, and the court did not err in overruling the demurrers.

■ The two clauses of the policy which give rise to the present controversy have been set out in the statement of facts which pre-

cedes this opinion, and reference may be made to them whenever necessary without the necessity for reiteration here. The plaintiff insurance companies contend: (1) that the proper construction of those two clauses is that any change in automobiles, from the one insured in the policy to a later acquired one, must be noted in writing in the form of an endorsement issued by a duly authorized agent and attached to and made a part of the policy of insurance; (2) that the law requires any modification of the insurance policy, to cover the newly acquired Cadillac, to be in writing because a contract required by law to be in writing may be modified only in writing: (3) that the notice given to the agent, if it was given, of a desire of the insured to have the policy cover the newly acquired automobile is not binding on the companies until a written endorsement is duly issued; and (4) that, if the notice was given, the agent was without authority to receive or bind the company by reception of the notice. ·

We cannot agree with these contentions. The clause entitled, "Automatic Insurance for Newly Acquired Automobiles," states that such insurance as is afforded by the policy applies also to the newly acquired automobile and is effective as of the date of the delivery of the newly acquired automobile, if it replaces an insured automobile, and covers the newly acquired automobile as fully as the replaced automobile was covered, provided notice of the change of automobiles is given to the company within a period of thirty days subsequently to the delivery of the newly acquired automobile. If the notice is given within the required thirty-day period, the newly acquired automobile is insured from the date of its delivery, subject only to the right of the company subsequently to demand any increase in premiums which might be required by virtue of the substitution of automobiles. It seems obvious to us that by the very terms of the contract of insurance, the policy, the insurance provided for in the policy was automatically extended to cover the newly acquired Cadillac from the moment of its delivery for and during a period of thirty days. Had an accident occurred during that thirty-day period we think that unquestionably the insurance companies would have been liable regardless of whether they had received notice or not. In order to effectuate the substitution of insurance coverage from

the replaced automobile to the newly acquired automobile for and during the thirty-day period, it was not necessary that the defendant Davis do anything. It was not necessary to alter, change, or vary any term of the policy as written to do so. It was merely necessary to comply with the terms of the policy. The policy itself contemplated the substitution without notice for and during this limited period. Melendez v. General Accident, Fire & Life Assurance Corporation, Limited, 189 Misc. 392 (70 N. Y. S. 2d, 404); Union Automobile Indemnity Ass'n. v. Reimann (Mo. App.) 171 S. W. 2d, 721; Hoffman v. Illinois National Casualty Co., 159 Fed. 2d, 564; Merchants Mutual Casualty Co. v. Lambert, 90 N. H. 507 (11 Atl. 2d, 361, 127 A. L. R. 483); Thompson v. State Automobile Mutual Ins. Co., 122 W. Va. 551 (11 S. E. 2d, 849). If the notice was not given within the thirty-day period, however, the insurance automatically terminated at the end of that period.

The question of whether or not, under the facts of this case, the insurance coverage provided for in the original policy was extended beyond the limited thirty-day period so as to cover the newly acquired automobile for and during the remaining life of the policy, presents a somewhat more difficult question for solution. Unquestionably in order to effectuate the substitution of the insurance coverage from the replaced automobile to the newly acquired automobile for and during the remaining life of the policy after the expiration of the thirty-day period, it was necessary, as a condition precedent, that notice be given as required in the policy during the thirty-day period, in the absence of an agreement to the contrary—and we find none in the policy—or in the absence of an estoppel or waiver.

It appears from the evidence that the term of the policy was to be from March 5, 1946, to March 5, 1947. Mr. Davis testified that, "on July 27, 1946, I traded this Oldsmobile for the 1941 Cadillac," and that "on either the first or second Friday in August," he notified the plaintiffs' agent, Morris. If Davis notified Morris, as he said he did, the notice was given well within the thirty-day period as required. The first Frday in August in 1946 was six days from the date of the delivery of the Cadillac on July 27, 1946, and the second Friday in August in 1946 was

thirteen days from the date of the delivery. With reference to giving the notice on either one or the other of those days Davis testified: "Mr. Hyman Morris happened to come by [Davis's place of business]. I asked him if he was going up town, and told him I couldn't get a cab and would like to ride with him. He said he would be glad for me to. I told him I wanted to go to the Capital Automobile place, that I had changed my Oldsmobile for this 1941 Cadillac, and I said, 'Incidentally I would like for him [you?] to cover this Cadillac with a policy, the policy that I now have on the Oldsmobile that I traded in.' He said, 'You are now covered, right now, from this minute on.' He said sometime when it is convenient for me to either call or come by and give him the motor number of the Cadillac. . . I didn't have another conversation with Mr. Morris about this policy until after the accident." As to this conversation, Mr. Morris testified: "I remember the particular afternoon sometime during the summer, having picked Mr. Davis up at the Gate City Table Company. . . I don't recall any conversation during that ride that Mr. Davis told me [he] had sold his 1941 Oldsmobile and had purchased a 1941 Cadillac. . . I don't recall this conversation. I would not swear that he didn't tell me. It is possible he did, and possible he didn't, but I have no recollection of any such conversation. I remember the ride." The jury was authorized to find that the defendant gave notice of the substitution during the requisite thirty-day period. No question that the notice should have been in writing was put in issue.

The plaintiffs contend, however, that, though it may have been that Davis gave the notice to Morris as he said he did, Morris was not an agent duly authorized to receive such notice, so as to charge the insurance companies with notice. Upon the question of Morris's authority to accept the notice so as to bind the insurance companies, the insurance companies introduced evidence, both oral and documentary, tending to demonstrate that actually Morris's authority as their agent was limited to soliciting insurance, communicating the application to the companies, general agent, who accepted or rejected the risk after investigation, and named the applicable premium rate if the risk were acceptable. G. N. Gabriel, manager of the plaintiffs' Atlanta office,

testified: "He [Mr. Morris] does not issue insurance policies that he writes in behalf of our company. With respect to what the usual and normal procedure is when Hyman Morris secures an application for insurance and submits the application to our company, Mr. Morris takes an application for a policy and submits it to us; if it is passed as a desirable type, we write it. . . We issue the policy and mail it to Mr. Morris . . and *Mr. Morris countersigns the policy and delivers it to the insured.* [Emphasis added.] The custom which our company follows with respect to issuing binders on all applications is that the agent will call us up and say bind so and so . . on a 1947 Cadillac, and the motor number will be furnished in the next couple of days or shortly. . . We have authority and we can bind a man on a temporary basis without actually issuing [a written policy or binder]." Hyman Morris testified: "The paper marked Exhibit No. 1 is the policy of insurance, which was later countersigned by me. . . The procedure followed in taking the application and having the policy written out and countersigned was that, to the best of my knowledge, Mr. Zimmerman at Gate City Table Company called the office that he wanted this car insured; that Mr. Davis was with them and he wanted it covered. We in turn called the Allied Group office [the plaintiffs] and gave them the information so they could issue the policy, and the policy was sent to our office and we mailed it to Mr. Davis; we later collected the premium from Mr. Davis on the insurance." From this evidence the jury was authorized to find that Davis dealt with Morris as agent for the plaintiffs, that he communicated his desire for insurance to Morris, and that he subsequently received the policy from Morris, countersigned by Morris, and paid the premium to Morris. The clause in the policy entitled "Automatic Insurance for Newly Acquired Automobiles" states that such insurance as is afforded by the policy applies also to the newly acquired automobiles as of the date of delivery, if the new automobile replaces an insured automobile, insofar as the insurance is applicable to the replaced automobile, and if notice of the change is given to the company within a period of thirty days subsequently to the delivery of the newly acquired automobile. This insurance is worded in the

present tense and is subject only to the right of the insurance company to demand any increase in premiums required because of the application of the insurance to the newly acquired automobile. This clause necessitates no change in the terms of the policy in order to cover the newly acquired car, because the policy expressly states that under this term of the policy the insurance also applies to the newly acquired automobile, if the requisite notice is given. This is not a promise of the insurance company to change the terms of the policy upon the giving of the notice required, but is a present insurance agreement effective as of the time the policy was originally written, and the only conditions imposed upon the insured in order for the insurance afforded thereby to remain effective throughout the original period of the policy and after the expiration of the thirty days, during which time the policy is effective without notice being given, are: (1) to give notice to the company within thirty days of the date of the delivery of the newly acquired automobile, and (2) to pay any additional premium which is subsequently required by the company; and the only conditions precedent to this insurance continuing after the expiration of the thirty days is the giving of the notice to the company; nor does the policy state the nature of the notice which is to be given. So construed, there is no conflict between this automatic-coverage-clause provision and that clause in the policy which provides that all changes must be effected by written endorsement. Nor does this construction deprive the insurance company of any right under the terms of the policy as written. Nor is this construction of the terms of the policy of insurance in contravention of the requirement of law that any change in a contract, required by law to be in writing, must be in writing also. The terms of the policy are all express and are in writing. The occurrence of an eventuality and the performance of conditions specifically provided for in the terms of the contract may be proved by parol. That the acquisition of a newly acquired automobile is a change of these terms which must be in writing, can no more be contended than that the limit of liability of "actual cash value," upon the theft of the automobile as stated in the policy, could be contended to be a term of the policy, a change of which would have to be in writing, after the

automobile had depreciated in value due to the natural wear and tear. The "actual cash value" is a term of the policy, though it changes, which may be proved by parol. So it is in the case of this change of automobiles, as provided in the terms of the policy under the provision for automatic insurance coverage for newly acquired automobiles.

In this connection also, under the written agency contract between Morris and the insurance company, which was in evidence, Morris clearly had the right to receive applications, collect premiums, and simultaneously countersign and deliver policies, retaining his portion of the premium as his compensation, and even to keep the balance of the premiums until the first of the month before remitting them to the company. In the instant case, under the automatic-coverage clause, no formal application was required of Davis to transfer the insurance from one car to another. If an additional premium had been acquired, and Davis had notified Morris, the agent of the company, who solicited the policy of insurance and represented the company in conducting the negotiations which led to the execution of the insurance contract, and subsequently to the delivery of the contract, and Davis had paid Morris the additional premium and at the same time had notified Morris, within the thirty day period, that he had acquired another automobile and had requested the transfer of the insurance from the first to the second car—this would not have been asking for a change in the terms of the policy, but only requesting performance of a condition specifically provided for in the policy on account of the occurrence of that condition or eventuality, and thus would have been a compliance with the automatic-coverage clause in the policy. The mere fact that in this particular instance no additional premium was required by the rates then in force would not vary the situation from one in which an additional premium is required.

On the question of whether Morris was authorized to receive the notice, Mr. Gabriel testified: "He [the applicant or insured] does not ever give information to us, but he does give the information to the agent that writes the policy, and the agent in turn immediately notifies us, and we in turn approve or disapprove that. All binders or changes are subject to our acceptance. It

is correct that all that it is necessary for him to do is notify the agent that wrote the policy, and anything after that is up to the agent. That is between us and our agent." We think, therefore, that the jury was authorized to find that the agent Morris in receiving the notice to transfer the insurance was acting within the scope of his authority under the written contract of agency and under the provisions of the policy, and was not attempting to to make a new contract of insurance or to alter or discharge or change any existing contract of insurance. Gianola v. United States Underwriters Insurance Co., 260 Ill. App. 300. See, in this connection, *German-American Mut. Life Asso.* v. *Farley*, 102 Ga. 720, 735 (29 S. E. 615); Union Mutual Ins. Co. v. Wilkinson, 80 U. S. 222 (4) (20 L. ed. 617); *Progressive Life Ins. Co.* v. *James*, 62 Ga. App. 387, 389 (8 S. E. 2d, 91).

In view of what has been said in the foregoing paragraphs of this division of the opinion, the jury was authorized, under the evidence, to find in favor of the defendants.

■ Special grounds 1, 2, and 3. We think that the court fully and fairly stated the substance of the contentions of all the parties, and in the first paragraph of his charge he stated: "I will not undertake to read you the plaintiff's petition in full but you will have the petition out with you, you will also have out with you the answer of the defendants, Davis, Morton, and Hawkins, and the amendments thereto, and you may read those pleadings as fully as you like. I will only give you, gentlemen, a brief outline of the contentions of the parties"; and in the second to the last paragraph of the judge's charge he told the jury: "You will take the contentions of the parties, in spite of anything the court might have said, from their actual pleadings in this case. If the court has stated any contentions of the parties not in accordance with their written pleadings, pleadings, of course, will prevail." After a careful consideration of the charge we do not think that the judge, in stating the contentions of the parties as urged in special grounds 1, 2, and 3, committed any reversible error; nor did the charge lead the jury to believe that, before the plaintiff could recover, every allegation of the petition would have to be proved by a legal preponderance of the evidence. *Fite* v. *McEntyre*, 77 *Ga. App.* 585 (49 S. E. 2d, 159, 167); *Western*

*& Atlantic R. Co.* v. *Reed,* 35 *Ga. App.* 538(3) (134 S. E. 134).

■ The judge charged the jury, "You are made by law the exclusive judges of the credibility of the witnesses which have testified in the case," and then immediately charged Code § 38-107, which states how the jury is to determine where the preponderance of the evidence lies, and then charged: "It is your duty where you can do so to reconcile the testimony so that all witnesses will be considered to have testified the truth, and impute perjury to none, but where you can not do this, it is your duty to believe those witnesses whom you consider more worthy of belief. . . A witness when placed on the stand and sworn to tell the truth is to be believed unless he is discredited or impeached in some way provided by law. I charged you on the credibility of witnesses; I will charge you on the method of impeachment. One method by which a witness may be impeached is by proving that such witness, subsequent to the incident and prior to the time of testifying in this case, has made contradictory statements out of court concerning some particular matter bearing on the case, that is, concerning some material issue. If a witness is shown to have made such contradictory statements, it is for the jury to say whether or not such witness is thereby impeached or is worthy of belief. A witness, however, though impeached, may be corroborated by proof of other facts and circumstances or by other credible testimony, in which event the jury may believe such witness, all of this being a matter entirely for the jury." The plaintiffs objected to this charge, above quoted, or at least the last paragraph, on the ground that it was confusing and misleading. In grounds 4, 5, and 6, the defendant contends that this charge is also error because, if the court undertakes to instruct the jury as to the method by which a witness may be impeached, it should instruct the jury on all the methods of impeachment so far as such instructions are authorized by the evidence; and he further contends that, while the judge charged the jury on the method of impeaching the witness by contradictory statements (Code, § 38-1803), he should have also charged the jury on the method of impeaching the witness by disproving the facts testified to by him (§ 38-1802), and also on the method of impeachment when the witness's testimony shall be disregarded entirely (§ 38-

1806). Here the judge having charged correctly upon one of the modes or methods of impeachment, to wit, impeachment by contradictory statements, his failure to charge also upon the other modes of impeachment by disproving facts testified to by the witness (Code, § 38-1802), and also on the method of impeachment when a witness's testimony shall be disregarded entirely (§ 38-1806), is not reversible error in the absence of a request, for a "'Mere failure to charge as to one method of impeachment does not in any wise invalidate a correct charge as to another method of impeachment.'" *Jones* v. *State* 70 *Ga. App.* 431, 446 (28 S. E. 2d, 373). The foregoing rule, that where the judge charges correctly on one or more of the methods of impeachment, his failure to charge also upon another method raised by the evidence is not reversible error in the absence of a request to charge, is subject to the single exception embraced in Code § 38-1806, which is, "If a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." But before this rule of total rejection is applicable, the false swearing must be made in the case on trial and not on the trial of some other case, no matter how closely related. *Smaha* v. *George,* 195 *Ga.* 412 (24 S. E. 2d, 385). This exception is not applicable to the facts in this case, hence under the general rule laid down in the *Smaha* case, the charge quoted above is not reversible error for the reasons urged in special grounds 4, 5, and 6.

■ Special ground 7. The court charged the jury: "Now I have said that the burden was upon the plaintiff to prove the material allegations of the plaintiff's petition. If the plaintiff proves that it issued a policy as stated—and that is admitted by the defendant, [it is apparent that the judge by a slip of the tongue used the word "plaintiff" when he meant "defendant"]— and that the original policy issued by the plaintiff covered the Oldsmobile as therein described, and if at the time of the alleged collision or incident involving defendants Davis, Morton, and Hawkins, in which the said Morton and Hawkins claim that they sustained injury, if at such time the defendant Davis was operating a Cadillac automobile not referred to in said insurance policy, then the burden would shift to the defendant Davis, also to the

defendants Morton and Hawkins in so far as their interest in said case might appear, to show by a legal preponderance of the testimony that the Cadillac automobile referred to did come within the provisions of the policy in lieu of the Oldsmobile car; and by their answers in this case and amendments thereto defendants Davis, Morton, and Hawkins seek to allege facts showing that the Cadillac automobile in effect had been substituted in said policy, and that at the time of said collision or accident the policy covered the operations of the Cadillac car being operated by defendant Davis, and that plaintiff was therefore liable, should there be found any liability in favor of Morton or Hawkins or both, against the said Davis." This excerpt from the charge as complained of in ground 7, when considered in connection with the whole charge, is not reversible error for any of the reasons assigned in this ground.

■ Special ground 8. The plaintiff requested the court to charge: "I charge you, gentlemen of the jury, that, under the law of the State of Georgia in special agencies for a particular purpose, the person dealing with the agent should examine his authority. Code, § 4-301. I charge you that Hyman Morris was a special agent of the plaintiffs in this case with limited authority, as is shown by the contract which has been introduced in evidence. I charge you that, being a special agent for a particular purpose, it was the duty of Foster L. Davis, one of the defendants in this case, to examine the authority of Hyman Morris in order to ascertain whether or not notice to him would be notice to the company, and Davis' failure to so make this examination would contitute to Hyman Morris only, notice to him as an individual and not notice to the company." The court paraphrased the request, or at any rate charged in the following language: "I charge you that, under the laws of this State in special agencies for a particular purpose, the person dealing with the agent should examine his authority. I charge you that under the written contract between the plaintiff companies and Hyman Morris that the said Morris was the special agent, or in this case, with limited authority as shown by the contract, *and that so far as the contract itself is concerned*, Morris under said contract would be an agent for the particular purposes enumerated in such

contract and it would be the duty of the said Davis, one of the defendants in this case, to examine the authority of Hyman Morris in order to ascertain whether or not notice to Morris would be notice to the said company, and Davis's failure to so make this examination would constitute notice to Hyman Morris only, notice to him as an individual and not notice to the company." The court did not commit reversible error in so doing, first, because a part of the request was an expression of opinion that a controverted fact had been proved, and would have violated Code § 81-1104; and also we think that the charge as given was fuller and fairer to both parties than the one requested; and second, the charge as given, when considered in connection with the charge as a whole, was sufficiently specific in its application to the facts of the case so as not to require the giving of the charge requested in this ground. Ground 8, is not meritorious.

■ Special grounds 9, 10, 11, 12, 13, and 14. The refusal of the court to charge the requests complained of in grounds 9, 10, 11, 12, 13, and 14 was not reversible error when considered in connection with the entire charge and what has been decided in division two of this opinion.

■ Special grounds 15, 16, 17, 18, 19, 20, and 21. The excerpts from the charge, excepted to in grounds 15, 16, 17, 18, 19, 20, and 21, were not erroneous when considered in connection with the entire charge and what has been decided in division two of this opinion.

■ Special ground 22. The defendant complains that the court erred "in failing to grant a mistrial on motion of movants on account of certain improper remarks made by Mr. Samuel Hewlett, counsel for the defendants Morton and Hawkins, before the jury and in the presence of the court and jury. "Said remarks were made during the course of cross-examination by Mr. Greene, counsel for movants, of Foster L. Davis, one of the defendants, and said motion was made by movants at the time the remarks complained of were made and before the verdict of the jury was rendered, and said remarks were not referable to any evidence introduced upon the trial of the case and were not authorized by any evidence introduced upon the trial of the case, and said remarks were as follows: 'I regret that Mr. Gabriel' (Mr. Garnett

N. Gabriel, Atlanta Manager for plaintiffs who testified in behalf of plaintiff in the trial of the case on the previous day) 'was insulted, if the court pleases, under his sworn testimony I don't. believe anybody in this court could believe him.'

"Movants aver: (a) That it is probable that the injury done to movants by the making of said improper remarks was not eradicated by the instructions given by the court that the remarks were improper and by the rebuke which the court gave the offending counsel. In this connection Mr. Greene, of counsel for plaintiffs, had completed the following portion of a question addressed to the witness Mr. Foster L. Davis: 'Q. You mean to tell the court and jury in this case—' when the following colloquy took. place between Mr. Hewlett, of counsel for defendants Morton and Hawkins, Mr. Greene, and the court: 'Mr. Hewlett: I object to that type of leading question. Mr. Greene: Type of what? This is cross-examination. Mr. Hewlett: Let me address the court, will you? You state that: you mean to tell the court and jury what he swears, and I take exception to it, that he means to tell them something. Mr. Greene: I think it ill behooves Mr. Hewlett after the way he treated my client, Mr. Gabriel, yesterday, and insulted him before this jury, to say anything. Mr. Hewlett: I regret that Mr. Gabriel was insulted, if the court pleases, under his sworn testimony I don't believe anybody in this court could believe him.'

" 'Mr. Greene: Now, Your Honor, I ask for a mistrial in this case on the ground that those statements so inflame the minds of the jury that they cannot possibly give a fair verdict in this. case.

" 'The Court: I am going to warn counsel that any more outbreaks like this and I will have to take decided action on them. I overrule the objection. On cross-examination I think you may ask that question.

" 'Mr. Hewlett: If the court pleases, Mr. Greene started this. He said that I insulted his client.

" 'The Court: It is all over, Mr. Hewlett. Gentlemen, forget this whole thing, anything that was said back and forth; it is unfortunate for counsel to be engaged in argument back and. forth sometimes in connection with cases.

" 'Mr. Greene: I want to renew my motion for a mistrial upon the ground that, after Mr. Hewlett told this jury that he thought no man in this room would believe Mr. Gabriel on oath, I think that is such as to be decidedly prejudicial.

" 'The Court: I think the statement was improper and I think whether or not it is prejudicial I do not know. I wish to instruct the jury to utterly disregard Mr. Hewlett's statement that a certain witness could not be believed on oath. He may state that if he wishes in connection with his argument, but, gentlemen, it is for you to say, finally, whether a witness shall or shall not be believed. It is not proper for counsel to make such statements at this time. I overrule your motion for a new trial.'

"(b) That said improper remarks were prejudicial to movants. In this connection movants show that the remarks were not made at the appropriate time for an argument before the jury, but on the contrary were made at a time when cross-examination was being conducted with respect to one of the defendants, and such remarks constituted a gratuitous effort on the part of counsel for defendants Morton and Hawkins, Mr. Samuel Hewlett, to inflame the minds of the jury against a witness for plaintiff who had testified on the previous day and whose testimony had been in no way impeached. Said remarks were calculated to and did discredit the testimony of plaintiffs' own manager and personal creditability of plaintiffs' own manager in the eyes of the jury in the absence of any evidence authorizing the conclusion stated before the jury at an improper time.

"(c) That the court overruled the motion of movants to declare a mistrial and refused to grant the same."

Considering the correcting measure used by the court, we do not think that this ground was reversible error.

■ Special ground 23. The plaintiffs contend that the court erred in admitting the following material evidence to the jury over objection of the movants, "to wit, testimony of the defendant, Luther B. Hawkins, on direct examination in his own behalf, as follows:

" 'I am a student at Georgia Tech. I was in an accident that happened on West Peachtree Street.'

"(a) Movants objected to the evidence as soon as and at

the time it was offered, and then and there urged before the court the following grounds of objections: That the said testimony was not relevant to any issues in the case. (b) An opposing party to. movants, to wit, Luther B. Hawkins, offered the evidence objected to. (c) The court overruled the objection and admitted the evidence. (d) The evidence was immaterial, prejudicial, and. hurtful to movants for the following reasons: (i) It was un-- disputed that the defendant, Foster L. Davis, on November 16, 1946, while driving a Cadillac automobile, was involved in an. accident in which the defendant, Donald C. Morton [was] injured, and that the defendants, Donald C. Morton and Luther B. Hawkins, had filed suits against the defendant Foster Davis. The only true issue in the case involved coverage or non-coverage of said Foster L. Davis under a certain liability policy attached to. the petition. There was no issue in the case as to whether or not the defendant, Luther B. Hawkins, was involved in said accident. or as to whether he was a student at Georgia Tech. The defendant, Luther B. Hawkins, had admitted paragraph 5 of plaintiff's petition as follows: 'That on November 16, 1946, about 6:30 p. m., the said Foster L. Davis had an accident in which the defendants, Donald C. Morton and Luther B. Hawkins, were injured, said accident having occurred at the intersection of West Peachtree Street and Third Street in the City of Atlanta, as petitioners. are informed and believe.' The sole purpose on the part of the at-- torney for Luther B. Hawkins of tendering the evidence that said Luther B. Hawkins was a student at Georgia Tech and was in an accident that happened on West Peachtree Street was to parade the said Luther B. Hawkins before the jury and to cause the jury to sympathize with him by virtue of his being a student at Geor-- gia Tech and being in an accident and, therefore, to be sympathetically inclined to find that coverage existed in the case. The purpose of the introduction of the evidence was to tell the jury in effect that here is a nice boy who is a student at Georgia Tech,. a popular institution, who was involved in an accident; unless. you find coverage in the case he may never be able to collect any damages which may be owing him. (ii) The evidence objected to was not a material part of any defense in the case in behalf of said Luther B. Hawkins, and constituted an illegal method of

bringing home to the jury, and emphasizing to the jury, facts which would cause the jury to sympathize with Hawkins as an injured party and as would cause the jury to find against these plaintiffs out of sympathy and without regard to the issues."

We cannot say that this ground shows reversible error.

The court did not err in overruling the motion for a new trial for any reason stated in the special grounds of the motion.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*