### 37085. HAWKINS *et al. v.* JACKSON.

DECIDED APRIL 8, 1958—REHEARING DENIED APRIL 21, 1958.

526

*Howard & Harmon, James C. Howard, Jr.,* for plaintiffs in error.

*Houston White,* contra.

QUILLIAN, Judge. ■ In the general ground of the motion for new trial the plaintiffs insist that the defendant should not be allowed to recover because the evidence shows that he did not exercise ordinary care in discovering that the chickens were diseased and thereby avoiding the consequences of the breach.

The defendant testified in part: that he called the plaintiffs a day or two after he received the first shipment of chickens' and told them the chickens did not look good; that he called Mr. Cowan, one of the plaintiffs, several times but it was a month before he came out to see the chickens; Cowan told him the chickens were all right and to put them on antibiotic feed; that the defendant followed Mr. Cowan's instructions; as the chickens got worse he continued to call Cowan and he did not come out to see the chickens for some time; he told Cowan the State laboratory had diagnosed the disease as C.R.D.; the chickens kept dying and he sold the chickens, under the advice of his veterinarian, for meat purposes.

The evidence was sufficient to support the finding of the jury that the defendant used ordinary care to discover the disease and in avoiding its consequences. The general grounds of the motion for new trial are without merit.

■ Special ground 1 of the amended motion for new trial complains that the verdict of $7,761.80 was excessive. The defendant testified: that as a result of the disease he paid $180 to veterinarians for their services; that he spent $197 for additional medication that was added to the chicken feed. Under authority of *Snowden* v. *Waterman & Co.*, 105 *Ga.* 384 (4) (31 S. E. 110), the above expenses were recoverable as special damages. There was also evidence that: at least 3,415 chickens were purchased by the defendant for laying purposes; the defendant paid $1,800 for a portion of the chickens, the remaining account being credited; 25 or 30 percent of laying hens either die or are culled during their normal productive life; the hatcheries guarantee 95% of the chickens will live for two weeks; that the chickens were at least ten weeks old when purchased by the defendant; the average profit is $2.50 to $3.00 per hen; the defendant received $1,116.20 from the sale of the remaining chickens for meat purposes and between 25 and 30 cents per dozen for the eggs the chickens laid while in his possession. The above evidence under the holding in *Hall Brothers Hatchery* v. *Hendrix*, 72 *Ga. App.* 137 (33 S. E. 2d 370), a case very similar to the present one, authorized a recovery of special damages for the loss of

profit over the full productive life of the chickens, less that percent that normally die or are culled.

We assume that 20 percent of the chickens would have died or been culled during the period the defendant would have had them (hatcheries only guaranteeing 95% would live the first two weeks), because the chickens were at least ten weeks old when purchased by the defendant.

The special damages plus the $1,800 paid for the first shipment of the chickens, less the sum received by the defendant from the sale of the chickens and eggs amounts to a figure greater than the verdict which was returned. The verdict was not excessive and special ground 1 is without merit.

■ Special ground 2 assigns as error the rejection by the court of certain documentary evidence. This document excluded from the evidence was a laboratory report of the Georgia Department of Agriculture, Veterinary Division, Pathological Laboratory. The plaintiffs insist that the laboratory report would have proven: that the defendant had in 1954 purchased chickens from Ball Hatchery in Owega, New York, and that the chickens previously purchased had C.R.D.; that the chickens in the present case could have contracted the disease because of being housed in the same building which was previously occupied by the diseased chickens in 1954.

The laboratory report in question does not state that the chickens purchased in 1954 had C.R.D., but in the blank provided for the diagnosis appears the following: "S1. indication of C. R. D."

The diagnosis in the document in question involves conjecture and opinion and it must be subjected to the safeguard of cross-examination of the person who makes it, which it obviously would not be if the court allowed the introduction of the laboratory report within which the diagnosis is contained. Under the ruling in *Knudsen* v. *Duffee-Freeman, Inc.,* 95 *Ga. App.* 872, 875 (99 S. E. 2d 370) the trial judge properly excluded the document.

■ Special ground 3 is based on newly discovered evidence consisting of an affidavit of Margaret A. Lighteiser, the person who prepared the laboratory report discussed in the preceding division of this opinion. In rebuttal of this ground the defend-

ant filed a counter-affidavit by the same Margaret A. Lighteiser in which she denied a majority of the material statements made in the original affidavit. The evidence being in conflict as to the truth of many of the facts claimed to be newly discovered and impeaching in character, this court will not interfere with the wide discretion of the trial court in refusing a new trial upon this ground. *Colquitt* v. *State,* 27 *Ga. App.* 44 (107 S. E. 396); *Atlanta Consolidated Street Ry. Co.* v. *McIntire,* 103 *Ga.* 568 (29 S. E. 766); *Edenfield* v. *Brinson,* 149 *Ga.* 377 (3) (100 S. E. 373).

*Judgment affirmed. Felton, C.J., and Nichols, J., concur.*