## 48709. WOOSTER v. BOLES.

CLARK, Judge. Boles, an author and script writer, contracted with the Georgia Power Company to produce a documentary film entitled "Altamaha Diary" dealing with the nuclear reactor plant at Baxley. He arranged with Wooster, whose firm "Wooster Productions" was "considered the Cadillac of the local film industry" (T. 61) in Atlanta, to do the cinematography. The instant litigation ensued with Boles filing suit against Wooster and Wooster making a counterclaim. The suit by Boles was for $6,000 of which $3,500 represented certain script writing services he alleged he had provided defendant and the balance of $2,500 was either an overpayment or a loan. Wooster denied any indebtedness and his counterclaim was for $7,500 which he alleged to be owing him on an alleged second portion of the film. His contention was that Boles had agreed to pay him $10,000 for a second portion of the film and that $2,500 had been credited thereon leaving a balance of $7,500. The jury found for the plaintiff for $2,500 plus interest. In doing so the jury rejected both the plaintiff's claim for $3,500 for script writing services and the defendant's counterclaim of $7,500 sought for the alleged installment number two of "Altamaha Diary." After a motion for new trial was denied defendant has taken this appeal.

The enumerations of error revolve around testimony by Boles which was in contradiction to the testimony he had given at a discovery deposition. Appellant's contention is that the plaintiff had wilfully sworn falsely either in his deposition testimony or at the trial of his case with reference to the item of $2,500. In the deposition he had stated the amount represented an inadvertent overpayment. At the trial he testified that the $2,500 represented a loan and that a letter dated March 11, 1971, was in connection with a "collusionary deal" (T. 124-126) between Boles and Wooster as a cover-up for Wooster in connection with Wooster's problems with the Internal Revenue Service.

Boles candidly admitted the discrepancies. He explained the contradictions on the basis that the deposition testimony was given without adequate consultation with counsel, that the deposition was informal having taken place in an attorney's office, and was in an atmosphere and circumstances that he did not regard as having the dignity of a court of law. (T. 104, 135-137). He further acknowledged that his making no reference to the I. R. S. during the deposition resulted from his decision not to implicate himself or Wooster in any sort of misconduct before the Internal Revenue Service (T. 122, 126). He went on to say "But I happen to be in court and I am telling the truth about it." (T. 108).

Wooster moved for a directed verdict for defendant on the basis that "If a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." Code § 38-1806. Defendant argued then and now on this appeal that such corroboration was lacking. In opposition Boles contended that corroboration had been shown and that the matter of credibility was for the jury to determine. The trial court denied the motion for directed verdict ruling the matter was one for determination by the jury.

In the motion for new trial as amended defendant contends "The verdict is contrary to the evidence and without evidence to support it for the reason that the evidence of the plaintiff, Paul Boles, was not creditable and was not corroborated." (R. 103).

1. Code § 38-1806 provides: "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury, but if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence. The credit to be given his testimony where impeached for general bad character or for contradictory statements out of court shall be for the jury to determine."

The law on this subject was stated by the late Judge (subsequently Justice) Joseph D. Quillian in *Griffin v. Ross,* 93 Ga. App. 407 (91 SE2d 815). Beginning on page 413, in graphic language, Judge Quillian said: "In these circumstances the jury would have been thoroughly warranted in disbelieving the witness altogether. Code § 38-1806; *Jefferson Standard Life Ins. Co. v. Bentley,* 55 Ga. App. 272 (190 SE 50). But it is for the jury to observe the witness' manner of testifying and possibly the jury has other knowledge

of his veracity to decide whether he swore positively falsely and ought not to be believed in any particular, or whether he was confused and his testimony, though highly inconsistent, was worthy of credit and to be given weight in determining the issues to which it related.

"Because this court in reviewing the record is impressed that the witness was probably not worthy of belief makes little difference since appellate courts are not vested with authority to pass upon the credibility of witnesses unless their testimony amounts to an assertion of the impossible. *Booker v. State,* 50 Ga. App. 66 (176 SE 917). The jurors are, as termed by Justice Bleckley 'the doctors of doubt,' and are clothed with authority to pass upon issues of fact and it is their province to decide what weight and credit will be given the testimony. The rules as venerable as our state's system of jurisprudence are stated in *Almand v. State,* 149 Ga. 182 (4) (99 SE 795); and in *Pacific Mutual Life Ins. Co. v. Barfield,* 57 Ga. App. 43, 48 (194 SE 258) where it is said, 'And "the ultimate determination as to the weight of an admission is for the jury" [decisions cited]. Even regarding the contradictory statements as a matter of impeachment, it was still for the *jury* to say whether the plaintiff was successfully impeached.' *Fulmer v. State,* 74 Ga. App. 298 (2, 3) (39 SE2d 732) states: ' "The credibility of a witness is exclusively for determination by the jury; and although a witness may have been successfully impeached, it is left to the discretion of the jury to decide whether his testimony has been corroborated; and while it would be their duty to disregard entirely the testimony of an impeached witness, unless corroborated, yet they have the right to believe the evidence of a witness, notwithstanding the impeachment, and in the absence of any corroboration. Section 5884 [38-1806] of the Civil Code (1910) is not intended as an abridgment of the absolute right of the jury to determine as to the credibility of witnesses." *Brown v. State,* 10 Ga. App. 50 (2) (72 SE 537); *Solomon v. State,* 10 Ga. App. 469 (3) (73 SE 623); *Edwards v. State,* 55 Ga. App. 187 (5) (189 SE 678) . . . "The whole question of the credibility of witnesses is wisely left to the jury under any and all circumstances, and, though Ananias and Saphira spoke again, the law would not strike them dead, but would leave their testimony to be weighed and accepted or rejected by the jury. This court is therefore powerless to interfere with the verdict of a jury where there is any evidence, however slight, to support it, and regardless of what may be the character

of the witnesses for the State." *Aycock v. State,* 62 Ga. App. 812 (1) (10 SE2d 84).' "

There is evidence of corroboration in the rebuttal portions of plaintiff's depositions, the evidence submitted concerning various technical data dealing with the film, the notations on the checks, and testimony of a former employee of defendant as to the amount ($15,000) that Wooster was to receive from Boles. Additionally, plaintiff presented a character witness to vouch for his general reputation and veracity. Furthermore, there was an acknowledgment by Wooster that he had in fact had difficulties with the Internal Revenue Service and that his business had been threatened to be closed. (T. 17-35).

Conflicts in the evidence and the credibility of witnesses are questions within the prerogative of the trior of fact and this court will not interfere with its determination of such matters. *Springfield Ins. Co. v. Harris,* 106 Ga. App. 422 (1b) (126 SE2d 920); *Northcutt v. Crowe,* 116 Ga. App. 715, 718 (158 SE2d 308).

2. There was no error in the ruling by the trial court denying the motion to strike the testimony of the plaintiff relating to the Internal Revenue Service.

*Judgment affirmed. Hall, P. J., and Evans, J., concur.*

Argued October 4, 1973 — Decided January 7, 1974.

*Harrison, Martin, Childs & Foster, David R. Autry,* for appellant.
*Haas, Holland, Levison & Gibert, Richard N. Hubert,* for appellee.