56074. GELLIS et al. v. B. L. I. CONSTRUCTION COMPANY, INC.

SHULMAN, Judge.

B. L. I. Construction Company (appellee-general contractor) brought suit against Institutional Investors Trust (appellant-construction lender/grantee in security deed) to recover $360,782.50, which amount represented the balance due, including retainage for services rendered and materials furnished, for the erection of an apartment complex. In addition to a general (in personam) judgment, appellee sought to have its contractor's lien declared superior to the lender's title and also prayed for actual and punitive damages for certain allegedly fraudulent actions by the lender. In an earlier appeal involving IIT's cross claim for the balance due on a promissory note, this court affirmed the grant of summary judgment in favor of the construction lender against the owner/borrower (Hinton). See *Claude A. Hinton, Jr., Inc. v. Institutional Investors*

*Trust,* 133 Ga. App. 364 (211 SE2d 169).

The instant suit was predicated on the following legal theories[1] raised in appellee's amended and consolidated complaint:

I. BLI's commencement of work under the contract (with notice to IIT) prior to the granting of IIT's deed to secure debt established a lien superior to the title of IIT. See, e.g., *Oglethorpe Sav. &c. Co. v. Morgan,* 149 Ga. 787, 793 (102 SE 528).

II. IIT's participation in the negotiation of the terms of the construction contract between BLI and the owner/developer (Hinton), including requirements by appellant concerning the withholding of construction loan retainage, and IIT's approval of the contract waived any priority of appellant's deed to secure debt over the appellee's contractor's lien. See, e.g., *Williams v. Brewton,* 170 Ga. 164 (152 SE 441) as limited by *Ga. State Sav. Assn. v. Wilson,* 189 Ga. 21, 26-29 (5 SE2d 14).

III. IIT's conduct, contrary to assurances to BLI that funds would be available to pay construction costs, in depleting undisbursed construction loan proceeds by directly debiting the loan account and crediting IIT for monthly interest installments due on the construction loan, without notice to BLI and with knowledge of BLI's detrimental reliance on the loan account for payment, resulted in an equitable estoppel against the assertion by IIT of any alleged priority of its security deed over appellee's lien.

IV. IIT's conduct in accepting and receiving the benefit of BLI's work without payment rendered IIT liable

---

[1]"[T]he cases have established four ways in which the grantee in a deed may lose his priority over a materialman's lien. They are where the grantee: (a) has actual notice of the claim of lien, [cits.]; (b) has constructive notice because the lien has been previously recorded, [cit.]; (c) has consented to the making of the improvement either expressly or impliedly, [cit.]; or (d) has misled the materialman as to the ownership of the property, giving rise to an estoppel. [Cits.]" *Bryant v. Ellenburg,* 106 Ga. App. 510, 512 (127 SE2d 468).

for the reasonable value of the services and also resulted in an equitable lien on the property superior to appellant's security interest. (The quantum meruit theory was not submitted to the jury.)

V. IIT perpetrated a fraud by silence in concealing from BLI that IIT and the owner/borrower/developer had agreed to apply construction loan funds toward the payment of interest due on the construction loan, thereby dissipating the loan proceeds and retainage on which BLI had relied for payment of construction work costs.

This appeal is from a judgment entered on a jury verdict against the construction lender, Institutional Investors Trust (IIT), in favor of a contractor's lien in the amount of $350,000, which lien was declared superior in priority to IIT's security deed to the property (but for the fact that bond had been posted), and awarding $10,782 as general and $100 as punitive damages. We reverse the judgment.

1. In two enumerations of error which are argued jointly, appellant asserts that the trial court erred in entering a verdict in favor of BLI because a verdict in favor of IIT was required by the law and the evidence.

A. Appellant argues that a verdict was demanded in its favor on the ground that appellee failed to establish any notice of a claim of lien, which notice was essential to authorize a finding that IIT took subject to a contractor's lien. See, e.g., *Marbut-Williams Lumber Co. v. Dixie Elec. Co.,* 166 Ga. 42 (142 SE 270). We disagree.

The owner/developer testified that he had called the corporate officers of IIT in New York and informed the president of appellant by telephone (prior to the closing of the loan and IIT's taking of a security deed on the property) that BLI had started work: clearing, grading and leveling operations were in progress, batter boards had been erected, lumber delivered, and the property had been flagged. The president of appellant acknowledged the telephone conversation, but denied that any discussion of work in progress had taken place. This testimony was properly admitted (see Division 3, infra) and raised a jury question as to whether IIT had notice of a valid claim of lien, i.e., " 'such notice as is positively proved to have been given to [the grantee of the security

deed] directly and personally, or such as [the grantee] is presumed to have received personally because the evidence within [its] knowledge was sufficient to put [it] upon inquiry [i.e., that labor and materials were being furnished under contract].' [Cit.]" *Caldwell v. Northwest Atlanta Bank,* 194 Ga. 370, 375 (21 SE2d 619). If the jury chose to believe the owner's testimony that the president of appellant had actual notice that work under the contract was in progress, then a verdict that IIT took its title subject to BLI's lien was proper. *Oglethorpe Sav. &c. Co. v. Morgan,* supra; *Picklesimer v. Smith,* 164 Ga. 600 (1) (139 SE 72); *Wager v. Carrollton Bank,* 156 Ga. 783 (120 SE 116).

Contrary to appellant's assertions, the owner's testimony was not without probative value on the ground that the owner had executed an affidavit at closing to the effect that no improvements or repairs had been made on the property within 90 days prior to the execution thereof, or if improvements or repairs had been made within that time, the improvements or repairs were completed and paid for in full. See generally *Wooster v. Boles,* 130 Ga. App. 542 (203 SE2d 745). Cf. *Benn v. McBride,* 140 Ga. App. 698 (3) (231 SE2d 438), allowing testimony to contradict a written statement under oath made in connection with a judicial proceeding.

Nor was the owner estopped by the above-mentioned affidavit from asserting that the facts were otherwise. While a lending institution may in good faith rely on a contractor's affidavit that there were no unpaid bills for labor or materials outstanding at the time of the loan and defeat a claim of lien asserted by one who has supplied materials under a contract with that contractor (*Builders Supply Co. v. Pilgrim,* 115 Ga. App. 85 (2) (153 SE2d 657)), the self-serving affidavit involved herein (executed by the owner Hinton) will not, by itself, defeat a claim of lien asserted by the contractor against the lending institution. *Old Stone Mtg. &c. Trust v. New Ga. Plumbing, Inc.,* 140 Ga. App. 686 (3) (231 SE2d 785). See also *Reynolds v. Magbee Bros. Lumber &c. Co.,* 117 Ga. App. 252 (3) (160 SE2d 531), revd. on other grounds 224 Ga. 379 (162 SE2d 327). See also 20 EGL 92, Liens, § 106.

B. IIT submits that there was no evidence to

authorize the establishment of a special lien superior to IIT's security deed based on the theory that IIT (grantee/lending institution) expressly or impliedly consented to improvements on its secured property by some definite and affirmative act on IIT's part communicated to, and subsequently relied on by, BLI. See *Williams v. Brewton,* supra, as limited by *Ga. State Sav. Assn. v. Wilson,* supra. See also *White v. Rome Bank &c. Co.,* 140 Ga. App. 431 (231 SE2d 448), for recognition of the limitation placed on *Williams.* We agree.

BLI urges that the lien is authorized by evidence of IIT's notice to BLI of approval of the loan and evidence that, at IIT's instance, a provision in the contract between BLI and the owner/developer pertaining to retainage had been modified. This evidence is not sufficient. Whatever the obligations flowing by reason of the lending agreement from IIT to the borrower (see *Mutual Fed. Sav. &c. v. Johnson,* 124 Ga. App. 68 (183 SE2d 50)), under the evidence as developed no obligations flowed from IIT to BLI by reason of a contract consent theory. *Lummus Supply Co. v. Fidelity Fed. Sav. &c. Assn.,* 141 Ga. App. 831 (234 SE2d 671). See also *Reid v. Saul,* 146 Ga. App. 264 (246 SE2d 121); *Stewart Bros. v. General Improvement Corp.,* 143 Ga. App. 258 (238 SE2d 259), where, upon owner/borrower's default in interest payments, construction lender refused to pay contractor for improvements.

We agree with IIT's contention in a related enumeration (No. 27) that the charge authorizing the award of a lien on this legal theory was not supported by the evidence and was, accordingly, erroneous.

C. Appellee submits that the work performed prior to the date of the recordation of IIT's security deed was not such work as would constitute lienable items under the Georgia lien laws.

Under Code Ch. 67-20, as against a third person with actual notice, the lien of a contractor on real estate improved under a contract with the owner thereof, if and when properly created and declared, attaches from the time the work under contract is commenced. *Oglethorpe Sav. &c. Co. v. Morgan,* supra. See also *Guaranty Invest. &c. Co. v. Athens Engineering Co.,* 152 Ga. 596 (110 SE

873). Evidence was presented that the following work was in progress under the contract between the owner (Hinton) and the contractor (BLI) prior to the taking and recordation of IIT's security deed: flagging, clearing, grading and leveling operations, erection of batter boards, excavation of footings, and pouring concrete. Whatever the law might be in other jurisdictions as to the accrual of a contractor's lien (see 1 ALR3d 822), we hold that this testimony was sufficient evidence of the commencement of the work to authorize the attachment of the lien prior to IIT's security interest and the declaration of a superior lien if otherwise appropriate.

Appellant's reliance on *D. H. Overmyer Warehouse Co. v. W. C. Caye & Co.,* 116 Ga. App. 128 (1a) (157 SE2d 68) as being authoritative precedent for its contention is misplaced. That case holds that the work performed was not such that a lien would attach in the first instance: it does not concern what constitutes the time the work under contract is commenced for the purposes of determining the accrual of a contractor's lien. See also Code Ann. § 67-2001 (3), which is not applicable to the instant case but represents an apparent attempt by the legislature to abrogate in part the holding in *Overmyer.*

D. As noted earlier, in addition to seeking the Ch. 67-20 statutory lien, BLI's amended and consolidated complaint prayed for the establishment of an equitable lien on the grounds that IIT was, by its conduct, equitably estopped from asserting the priority of its security interest. See, e.g., *G. E. C. Corp. v. Levy,* 119 Ga. App. 59 (2) (166 SE2d 376), as to BLI's right to plead in the alternative. IIT urges that BLI may not seek equity because of certain conduct on the part of BLI.

Since we hold elsewhere in this opinion that the evidence in this case is insufficient to raise an equitable estoppel against IIT (see Division 17), conduct which might bar BLI from raising the estoppel issue is irrelevant and need not be considered.

E. Citing *MacLeod v. Belvedale, Inc.,* 115 Ga. App. 444 (154 SE2d 756), counsel for IIT urges that the evidence demanded a finding that BLI abandoned the contract by stopping performance upon the mere apprehension of nonpayment by the owner. IIT argues

that BLI cannot demonstrate the substantial compliance with the contract necessary to support the establishment of a special lien. See generally Code Ann. § 67-2002 (1).

In support of its contentions, IIT cites a telegram from BLI to IIT and the deposition of the president of BLI. This evidence is to the effect that BLI had discontinued construction on the project due to nonpayment. At trial, the president of BLI disputed the evidence in both the deposition and the telegram. The president testified that BLI had never discontinued, much less abandoned, construction. There was further testimony that the telegram was sent after payment was past due. See *Chandler v. Buss,* 125 Ga. App. 882 (189 SE2d 479), holding that statements in a deposition may be used to impeach a witness, but not to estop a witness from testifying in contradiction thereto.

Contrary to IIT's contention, the evidence did not demand a finding that BLI abandoned the contract and stopped work upon the mere apprehension of the owner's nonpayment. Compare *MacLeod,* supra. The evidence did not even demand a finding that the contract had been abandoned.

F. The original complaint in this action was filed on November 30, 1973. On September 26, 1974, more than one year after the September 25, 1973, claim for lien was filed, the complaint was amended by a count praying for the establishment of a special lien. IIT, citing *G & B Contractors, Inc. v. Coronet Developers, Inc.,* 134 Ga. App. 916 (216 SE2d 705), urges that BLI was barred from foreclosing its lien as the 12-month statute of limitation for foreclosure had expired. See Code Ann. § 67-2002 (3). This argument is not well taken.

In response to IIT's argument, BLI points out that on January 25, 1974, an amended complaint was filed which requested that the security deed of IIT be declared subordinate to "plaintiff's lien. . .to be established in this action." These arguments concerning the time when BLI sought to establish a special lien on the property are not relevant in determining whether BLI has satisfied statutory requirements of § 67-2002 (3). "[T]he 12-month period allowed for filing which is a condition precedent to the obtaining of the lien refers to 'an action against the

contractor [as being the entity primarily liable] and has no reference to the time within which the lien must be enforced.'" *Adair Mtg. Co. v. Allied Concrete Enterprises, Inc.,* 144 Ga. App. 354, 357 (241 SE2d 267), affd. 241 Ga. 121 (243 SE2d 888). As the record shows that BLI commenced an in personam action against the owner/developer within 12 months after the debt became due (see *Old Stone Mtg. &c. Trust v. New Ga. Plumbing, Inc.,* supra, Division 1), BLI fulfilled the condition precedent to the assertion of its lien. *Allied Asphalt Co. v. Cumbie,* 134 Ga. App. 960 (2) (216 SE2d 659); *Adair Mtg. Co.,* supra. See generally *Steenhuis v. Todd's Const. Co.,* 231 Ga. 709 (6) (203 SE2d 530), where the Supreme Court upheld the establishing of a judgment as a special lien even though no prayer for relief requested such a lien.

G. The evidence shows that in addition to the claim of lien recorded September 25, 1973, which is the subject of the instant action, BLI filed for record a claim of lien for at least part of the same debt on August 30, 1973. On September 20, 1973, this first lien was marked "Paid Satisfied and Ordered Cancelled." IIT asserts that an accord and satisfaction resulted when IIT released the lien on September 20, 1977, and that BLI could not thereafter claim the second lien because the second lien was extinguished by the satisfaction of the first.

The evidence cited by IIT in support of the alleged satisfaction was that the president of appellee agreed to release the lien and authorized it to be satisfied upon being told by the owner that IIT would not disburse loan proceeds until the lien had been lifted.

BLI offered evidence that the debt which was in fact the subject of the August 30 lien was not fully paid *(Security Financial Corp. v. Blackwood,* 111 Ga. App. 850 (143 SE2d 515); see generally *Complete AAA Mfg. Corp. v. C & S Nat. Bank,* 119 Ga. App. 450 (1) (167 SE2d 734)) and that the full amount which was the subject of the September 25 claim of lien had not been satisfied.

It is to be noted that IIT cites no evidence that BLI accepted any payment conditioned on BLI's not filing a future claim of lien for unpaid labor and materials which were the subject of the August 30 claim of lien. Under

these facts, a finding of satisfaction was not demanded.

In a related enumeration (No. 44), IIT urges that the satisfaction issue was established as a matter of law and should not have been presented to the jury. Based on the analysis in this subdivision, this enumeration is without merit.

H. IIT cites no authority for the proposition that the September 25, 1973, lien did not attach from the commencement of the work so as to predate the recordation of IIT's security deed, but rather attached from the date of the allegedly satisfied first lien. We find this argument unpersuasive.

I. The building contract between BLI and Hinton provided that the issuance of an architect's certificate was one precondition to final payment. The undisputed evidence shows that such a certificate was never issued. IIT, relying on *Southern Mfg. Co. v. R. L. Moss Mfg. Co.*, 13 Ga. App. 847 (2) (81 SE 263) as controlling authoritative precedent, submits that BLI, as a matter of law, had no right to foreclose the lien sought in its action. We must take issue with IIT's position.

IIT's reliance on *Southern Mfg. Co.* is misplaced. The evidence shows that the architect responsible for issuing the final certificate was under the employ of IIT. The record contains a court order that the architect either issue the certificate sought by BLI or explain why in good faith such certificate had not been issued sooner. The architect did not comply with this order. This failure raised a question as to estoppel which would preclude the insistence upon the certificate of the architect. See *Southern Mfg. Co.*, supra, p. 861. While one seeking to foreclose a contractor's lien for labor and materials must show substantial compliance with the contract (Code Ann. § 67-2002 (1)), if the completion of the contract was prevented by the party otherwise having the right to insist on the architect's certificate, this is equivalent to completion of the contract as a remedial element. *Allen v. Moore*, 77 Ga. App. 426 (1) (49 SE2d 121). Cf. *Shubert v. Speir*, 201 Ga. 20 (3) (38 SE2d 835).

IIT's Enumeration 33, complaining that there was no evidence to authorize a charge on the principle set forth in *Allen v. Moore*, supra, is also without merit.

J. IIT, citing *Reynolds v. Magbee Bros. Lumber &c. Co.,* supra, argues that BLI cannot foreclose its lien against IIT.

*Reynolds* has no application to this case. In that case, no suit was brought against the owner/entity primarily liable. It was held that the lien claimant could not establish a right to a lien by an action against a subsequent grantee of the property, that grantee having no contractual or legal relationship with the claimant. In the instant case, suit was brought concurrently against the owner/developer, seeking both an in personam judgment and the declaration of a special lien, and against IIT, praying that IIT's security interest be subordinated to the special lien against the property to be established in the suit against Hinton. This was the proper procedure. See *Maloy v. Planter's Warehouse &c. Co.,* 142 Ga. App. 69 (1a) (234 SE2d 807). As to the effect of the owner/developer's (Hinton) filing for bankruptcy, two years after the instant action, and the subsequent adjudication of bankruptcy, see *Middle Ga. Lumber Co. v. Hunt,* 53 Ga. App. 578 (3) (186 SE 714).

K. An in personam judgment would have been proper under the fraud theory. See Subdivision O, infra. IIT's argument that there is no evidence of privity to support an in personam award is irrelevant, since in personam recovery would be authorized on other grounds. Enumeration 1 (q) involving the same subject is also without merit.

L. Code Ann. § 105-303 (misrepresentations in letters to obtain credit) and Code Ann. § 20-401 (2) (promise to answer for debt or default or miscarriage of another) do not bar BLI's action. BLI does not assert any claim against IIT predicated on any legal theories affected by those sections.

M. We reject IIT's theory that BLI is precluded from asserting its claim of lien on the grounds that no contract existed between Hinton and BLI prior to the recordation of IIT's security deed. Although questions of fact remain as to the terms of the contract and as to the time provided for commencement of the work thereunder, the evidence authorized a finding that a contract existed. Cf. *Christian v. Bremer,* 199 Ga. 285 (3) (34 SE2d 40).

N. We reject appellant's conclusion that IIT's foreclosure under deed of power cut off and extinguished the lien claimed by BLI. The conclusion is based on the unwarranted assumption that, as a matter of law, IIT's deed to secure debt is superior to BLI's claimed lien. Compare *Englehart-Hitchcock Co. v. Central Invest. Co.,* 136 Ga. 564 (71 SE 787).

O. IIT urges that if there was any evidence of fraud, such fraud was on the part of the owner/developer (Hinton) and is not chargeable to IIT. See *Johnson v. Durrence,* 136 Ga. App. 439, 442 (221 SE2d 652). Under the particular circumstances of this case, IIT's argument is not well taken.

BLI does not seek to predicate liability on actual fraud. No evidence is cited of fraudulent misrepresentations on the part of IIT. As such, there could be no actionable fraud absent a showing of other fraudulent conduct on the part of IIT. See *Shaw v. Cook County Fed. Sav. &c. Assn.,* 139 Ga. App. 419 (1) (228 SE2d 326), as to the five elements of fraud and deceit. See also *American Nat. Bank of Macon v. Fidelity &c. Co. of Maryland,* 131 Ga. 854, 858 (63 SE 622).

Rather, BLI, citing *Reeves v. Williams & Co.,* 160 Ga. 15, 19 (127 SE 293), and Code Ann. § 37-704, argues that sufficient evidence was presented at the trial to authorize a finding that, under the circumstances, IIT perpetrated a fraud by silence in failing to communicate substantial changes in material facts known to IIT but unknown by BLI.

In support of this contention, BLI cites evidence that the original contract between the owner/developer/borrower (Hinton) and BLI contained a provision for withholding a 10 percent retainage for each progress payment until the project was 50 percent complete; that IIT had insisted upon the retainage for the entire construction period until completion; that BLI changed its original contract with Hinton to comport with IIT's requirement; that within one month after the loan closing, IIT proposed, and subsequently effected, an arrangement whereby monthly interest installments due under the construction loan would be deducted from undisbursed loan proceeds and directly credited to IIT;

that this arrangement in fact depleted the loan proceeds including the 10 percent retainage reserve; that at no time did IIT inform BLI that it was not holding the retainage; and that notwithstanding knowledge of BLI's filing of claims of lien due to Hinton's nonpayment of construction draws, IIT continued to deplete the construction loan fund by crediting its own account.

*Reeves* is as sound and as just and as fair today as when the Supreme Court rendered the opinion in 1925. Although we recognize that in *Reeves* there was direct evidence that the defendant had "purposely concealed, and abetted [another] in concealing from [the defrauded party] knowledge of the fact that the contract . . . had been changed," (id., p. 20) we find its principles to be applicable to the facts here alleged. The trial court properly allowed the issue to be submitted to the jury on this theory and an award of general and punitive damages would have been proper thereunder. This enumeration (1(r)) is accordingly without merit. Because of our holding in this subdivision, it follows that Enumerations 39, 40, 41, 42, and 43, urging that there was no evidence to authorize various charges on fraud and punitive damages, are also without merit.

P. As appellant made no motion for directed verdict as to Count 3 (BLI's claim for an equitable lien on construction loan funds), no issue is presented for appellate review. *Post-Tensioned Const., Inc. v. VSL Corp.,* 143 Ga. App. 148 (9) (237 SE2d 618).

Q. IIT, citing *Wilkins, Neely & Jones v. Gibson,* 113 Ga. 31 (1) (38 SE 374), and *Flournoy Plumbing Co. v. Home Owners Loan Corp.,* 181 Ga. 459 (182 SE 507), argues that the judgment establishing BLI's lien as superior to that of IIT is erroneous in that IIT was subrogated (to the extent of payment) to the priority of a preexisting deed to secure debt held by First National Bank by virtue of IIT's satisfaction of the security deed. The failure to properly present this issue in the court below precludes consideration at this time. See, e.g., *Foster v. Economy Developers, Inc.,* 146 Ga. App. 282 (6) (246 SE2d 366). Accordingly, IIT's Enumeration 1(p) is without merit.

In summary, it cannot be said that the case should not have been presented to the jury because the verdict

was demanded in favor of IIT. See *Young v. Wiggins,* 229 Ga. 392 (1) (191 SE2d 863) as to the standard used in the consideration of the denial of a motion for directed verdict. See also *Shingler v. Bailey,* 135 Ga. 666 (1) (70 SE 563), holding that review of the sufficiency of plaintiff's evidence may be declined by appellate court when case is reversed on other grounds.

2. Hinton testified at trial by way of deposition. In the course of the deposition, counsel for appellee presented Hinton with an affidavit which he had executed earlier. Also during the deposition, counsel for appellant cross examined Hinton concerning the affidavit. At trial, this affidavit was admitted into evidence over IIT's objection. IIT, citing *Hartley v. Caldwell,* 223 Ga. 333 (155 SE2d 389), urges that in a judicial trial in a court of law where evidence is finally adjudicated and final judgments rendered, the admission of ex parte affidavits over proper objection constitutes reversible error. See *Camp v. Camp,* 213 Ga. 65 (97 SE2d 125). See generally *Lewis v. First Nat. Bank,* 141 Ga. App. 338 (233 SE2d 465).

The holding in *Hartley* does not require reversal in this case. Because Hinton was available at the taking of the deposition for cross examination by the appellant, the evidence was not subject to the infirmity involved in *Hartley.* See, e.g., *Moss v. Moss,* 135 Ga. App. 401 (4) (218 SE2d 93). The other objection to the admission of the document on the ground that no foundation was laid does not properly preserve the objection for review. *Dillard v. State,* 128 Ga. App. 747 (197 SE2d 924). As to the use of affidavits as, and admissibility in, evidence at trial, see *Brown v. Sheffield,* 121 Ga. App. 383, 388 (173 SE2d 891); 3 AmJur2d 404, Affidavits, § 29; 2A CJS 503, Affidavits, §§ 58-60. Accordingly, the reasons advanced in Enumerations 3 and 7 afford no grounds for reversal.

3. Contrary to IIT's assertion in Enumeration 4, the trial court did not err in admitting in evidence, over objection, testimony concerning a telephone conversation. The testimony of the IIT officer sought to be charged as a party to the conversation, admitting that a telephone conversation was had, but disputing the content of the conversation, authorized the introduction of the testimony. See *Cannady v. Lamb,* 146 Ga. App. 850

(1) (247 SE2d 500).

4. A continuation letter was admitted into evidence (and copies of the letter as attachments to other exhibits) wherein BLI promised, in consideration for IIT's loan commitment to Hinton, to continue performance for IIT upon Hinton's default if IIT elected to demand performance. IIT contends that the admission of the document over IIT's objection constituted reversible error.

The letter was relevant in determining whether, under the circumstances, IIT had a duty to disclose. Thus, the admission of the letter did not constitute reversible error. Accordingly, Enumerations 5, 6, and 8 are without merit.

5. The court improperly permitted a witness for BLI to testify that BLI "had an obligation under the contract" over IIT's objection that such testimony was a legal conclusion. *Tarbutton v. Duggan,* 45 Ga. App. 31 (10) (163 SE 298). But see *Townsend v. Hames,* 40 Ga. App. 834 (2) (151 SE 665).

6. Enumeration 10, complaining of the admission into evidence of the second lien is predicated on arguments which have been considered and rejected. (See Division 1G.)

7. Appellant urges that the trial court improperly expressed an opinion in charging on the effect of stricken admissions in pleadings. We must take issue with this contention.

The charge included an instruction that the jury was to "determine just what sort of an admission was made, if any. . ." See, e.g., *Payne v. Rivers,* 28 Ga. App. 28 (2) (110 SE 45); *Elliott v. Marshall,* 179 Ga. 639 (4) (176 SE 770). The charge is not erroneous for the reason assigned.

8. We reject appellant's assertion that, even absent objection, the trial court's charge on the presumption arising from failure to produce evidence (Code Ann. § 38-119) constituted reversible error. *Central of Ga. R. Co. v. Luther,* 128 Ga. App. 178 (1) (196 SE2d 149). Cf. *Trammell v. Williams,* 97 Ga. App. 31 (1) (101 SE2d 887). IIT's Enumeration 12 is without merit.

9. Appellant submitted a timely written request to charge in accordance with Code Ann. § 38-1806. Code

Ann. § 38-1806 provides in part that "if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." It is submitted that the charge as given in light of the refused requested charge constituted reversible error. We disagree.

As to the contention that the charge was authorized because the owner Hinton's testimony at trial was in direct contradiction to an affidavit given to IIT, see *Milwaukee Mechanics Ins. Co. v. Davis,* 79 Ga. App. 70, 83 (52 SE2d 643), holding that "before this rule of total rejection is applicable, the false swearing must be made in the case on trial. . ." As to this witness, counsel for IIT does not cite any evidence that the witness was ever confronted with or asked to explain the affidavit or that false swearing was made on the trial of this case. *Hubbard v. State,* 145 Ga. App. 714 (4) (244 SE2d 639).

As to another witness, Bollinger, the testimony at trial was contradictory. The witness testified that substantial work had begun by a certain time and that the witness was on the work site almost daily. The same witness also asserted that a statement in his deposition was correct. According to the deposition, the witness testified that he had only briefly visited the work site at the time in question and did not do anything other than drive by the work site. The witness never admitted swearing falsely. But see *Roach v. Carroll,* 110 Ga. App. 636 (1) (139 SE2d 523). The witness' testimony that work had commenced was corroborated by others. In any event, "[c]onsidering the charge on the subject of impeachment and contradictory statements no reversible error has been shown." *Henderson v. State,* 146 Ga. App. 114 (2) (245 SE2d 437).

10. IIT's Enumerations 14, 18, 20, 21, 22, 23, 24, 25, 26, 47, 48, 49, 50, and 52 concern either the failure of the trial court to charge without request or the refusal of the trial court to charge in accordance with various timely submitted written requests. As this judgment must be reversed on other grounds, and as the evidence authorizing such charges may be different on retrial, no ruling will be made on either the failure or refusal to give

such charges. Cf. *Shingler v. Bailey,* supra, Division 1. As to refusals of requested charges, see *Slaughter v. Linder,* 122 Ga. App. 144 (2b) (176 SE2d 450). See also *Wells v. Metropolitan Life Ins. Co.,* 107 Ga. App. 826, 835 (131 SE2d 634), holding that a trial court may properly refuse a requested charge when such charge is infected with any inaccuracy even though the requested charge may not be so erroneous as to require reversal if given.

11. As the jury did not award nominal damages, references in the general charge to nominal damages, even if error, were not harmful to appellant. *Taylor v. Allen,* 77 Ga. App. 659 (2) (49 SE2d 544).

12. Contrary to appellant's contentions, the charge on punitive damages was authorized by the evidence. See Division 1 (0) of this opinion. Taken as a whole, the charge as given on punitive damages is not erroneous for the reasons urged.

Appellant complains in Enumeration 17 that the trial court improperly expressed an opinion in a portion of the charge on punitive damages. The objectionable portion reads as follows: "if you determine that the plaintiff is entitled to recover actual damages or general damages, and therefore is entitled to recover punitive damages. . ." This is well taken. On retrial, the charge should not be given. See, e.g., *Walk v. Carter,* 110 Ga. App. 273 (3) (138 SE2d 390).

13. IIT submitted a charge to the effect that a contractor who does actual construction work without having obtained a building permit cannot claim a lien for any work performed prior to the date such building permit was obtained. The trial court instructed the jury in accordance with IIT's request, but added that if the work performed was merely preparatory to the actual construction, then the above-mentioned rule was not applicable. IIT asserts that this addition to the charge was error, misleading and prejudicial to IIT.

Because the requested charge should not have been given, we need not rule on the effect of the court's additional language. The acts which were the subject of the jury charge do not affect *when* the lien will attach. Whatever the effect that the late procurement of a building permit may have on the substantial compliance

with the contract provision requiring procurement of the permit before commencing construction (cf. *Southern Mfg. Co.,* supra), and whatever the effect of the commencement of work without the permit, if required, may have had on the enforcement of the lien and whether the lien will attach in the first instance, the lien attaches on "the beginning of the work under the contract." *Oglethorpe Sav. &c. Co. v. Morgan,* supra; Code Ann. § 67-2001.

In an enumeration related to the issue of compliance with the contract, No. 51, IIT asserts that the court erred in failing to construe a provision in the contract between BLI and Hinton requiring that work not be commenced before a construction loan was "set up." IIT submits that, as a matter of law, this meant "closing." The trial court properly refused to so hold. (We also note that BLI produced evidence that the contract parties had agreed to commence preliminary work prior to closing.)

14. The trial court charged the jury that "the lien of a contractor on real estate improved under a contract with the owner thereof, as provided by law, if and when created and declared as required by law, attaches from the time the work under the contract is commenced, and will take priority over the title acquired after the commencing of work by the contractor and with actual notice of the contractor's claim by a grantee of a deed to secure debt from the owner of the real estate although the deed to secure debt was executed and recorded before the completion of the contract and before the claim of lien was formally filed of record."

Appellant asserts that the charge was erroneous insofar as it instructed the jury that a finding that notice to the grantee of the contractor's claim was sufficient (if other conditions were satisfied) for the declaration of a lien superior to the grantee's title. IIT argues that the law requires notice of a "claim of lien," not merely of the "contractor's claim." It is asserted that notice of a "claim of lien" is much more that notice of the commencement of the work under the contract, it is notice that the contractor was claiming money due for work performed or materials furnished. Appellant's assertion is not supported by the case law.

Contrary to IIT's contentions, notice of a claim of lien is not effected only upon a demand for payment or the filing of a claim of lien. The notice of a claim of lien referred to in the case law is not notice of the "perfected or recorded lien" (although this necessarily is sufficient), but rather is notice of the furnishing of material or performance of labor. *Green v. Farrar Lumber Co.,* 119 Ga. 30 (46 SE 62). We also note that reading this portion of the charge in context of the whole, the jury could not have been misled that the "contractor's claim" was something other than a "claim of lien." Thus, the charge is not erroneous for the reason assigned.

In a related enumeration (No. 31) and on the same grounds urged above (i.e., that the grantee must have notice of a claim of lien and not merely that work had commenced under the contract), counsel for IIT urges that the court erred in charging to the effect that (after defining other necessary conditions) a lien would be authorized either if IIT knew prior to taking its security deed that BLI had commenced work under the contract or was put on inquiry, which inquiry would have led to knowledge that work had commenced. We reject this argument for the same reasons discussed above.

15. The trial court charged the jury (in substantially the language of *Oglethorpe Sav. &c. Co.,* supra, p. 793), as follows: "Furthermore, a contractor's lien attaches from the time the work under the contract is commenced, although it lacks, certainly until it is recorded, the quality of constructive notice, but one who takes a deed to the property or purchases it while work is in progress, with knowledge of the contract and notice of the contractor's claim of lien, though imperfect or unrecorded at that time, must be held to take the property subject to the lien, provided that the contract is completed and the lien is declared and enforced within the time prescribed by Georgia law."

Counsel for IIT submits that the instruction was error because it is contrary to language in *Ga. State Sav. Assn. v. Wilson,* supra, that "[m]ere knowledge that improvements are to be made will not subject the title of the true owner to a lien for material." Id., p. 28. We disagree.

Contrary to IIT's contention, the charge did not instruct the jury that mere knowledge that improvements are to be made will subject the title of the true owner to a lien. As such, the charge was not erroneous for that reason.

In a related enumeration (No. 30), IIT asserts that the use of the word "must" in the charge was a directive by the court and, as such, constituted an expression of opinion. This, too, is not well taken. The portion of the charge set forth was merely a statement of the law and did not amount to an expression of opinion. *Walker v. Lastinger,* 141 Ga. 435 (3a) (81 SE 203). Cf. *Flannery v. Hightower,* 97 Ga. 592 (3) (25 SE 371). The total charges as given, when taken as a whole, fully informed the jury that it was their task to determine the facts and that, in the event the jury found certain facts, then they would be authorized (but not required) to find in favor of a lien.

16. In Enumeration 32, IIT argues that the repetition of charges defining actual notice constituted error. Because it is necessary to reverse this case, we need not consider this contention. But see, e.g., *Harper v. Daniel,* 133 Ga. App. 400 (5) (211 SE2d 5); and *Mullis v. Chaika,* 118 Ga. App. 11 (3) (162 SE2d 448). Such repetition of charges is unlikely to occur on retrial.

17. In accordance with BLI's written request, the trial court instructed the jury on the elements of estoppel by conduct (see *Bennett v. Davis,* 201 Ga. 58, 63 (39 SE2d 3)) and the doctrine of equitable estoppel (Code Ann. § 38-116). We agree with IIT's assertion that the charges were not authorized by the evidence in this case.

Count 2 of BLI's amended and consolidated complaint alleged as an independent ground for recovery that, even assuming the statutory lien arising by operation of Ch. 67-20 was inferior to IIT's security deed, IIT was estopped by its conduct from asserting the priority of its security deed over BLI's lien.

In support of these instructions and, thus, the presentation of these legal theories to the jury, BLI cites evidence of the following conduct on IIT's part: IIT's insistence prior to approval of Hinton's loan application that the retainage provision in the contract between BLI

and Hinton be extended to cover the duration of construction; IIT's insistence that BLI execute an option granting IIT the right, at IIT's election, to insist on the completion of the project by BLI in the event of Hinton's default on the loan; IIT's actions which resulted in construction loan funds not being sufficient to cover the construction contract balance; and IIT's conduct in failing to inform BLI of those actions in spite of IIT's knowledge of BLI's reliance on the loan proceeds and retainage being available.

In essence, BLI is alleging that IIT's above-mentioned conduct adversely influenced BLI's right to a special lien on the property superior to IIT's security deed. Because "[t]he representations or conduct relied on to raise the estoppel must have been concurrent with or anterior to the action which they are alleged to have influenced" (*Smith v. Hanna Mfg. Co.,* 68 Ga. App. 475, 487 (23 SE2d 552); *Bennett v. Davis,* supra, p. 64), the cited evidence was insufficient to authorize the subordination of IIT's security deed to BLI's asserted lien on the estoppel theory.

The conduct alleged simply could not have affected the priority of BLI's lien. A portion of the conduct alleged occurred subsequent to commencement of the work on the project (the time from which BLI's lien would attach, once established) and subsequent to the effective date of IIT's security deed. There was no evidence that, if the conduct alleged on the part of IIT had not occurred, BLI would have commenced work under the contract sooner (as noted, the commencement of the work establishes the effective date of the established lien and therefore its order in priority). Cf. *C & S Equip. Leasing, Inc. v. Atl. Fed. Sav. &c. Co.,* 144 Ga. App. 800 (1) (243 SE2d 243). As to equitable estoppel and estoppel by conduct, see generally *Reuben v. First Nat. Bank,* 146 Ga. App. 864, 866 (247 SE2d 504); *Bank of Lumpkin v. Bank of Stewart County,* 20 Ga. App. 1 (92 SE 778).

18. Enumerations 36, 37, 38, and 53 complain of various jury instructions which would have authorized the jury to find an equitable lien in favor of BLI on construction loan funds, with priority over both the borrower and the lender.

Because the jury did not find in favor of such equitable lien on construction funds, the charges could not have harmed IIT. *Oak Creek Dev. Corp. v. Hartline-Thomas, Inc.,* 138 Ga. App. 83 (2) (225 SE2d 515). Therefore, we need not consider whether the charges were authorized under the evidence of this case. But see *Reid v. Saul,* supra, holding under the facts of that case no duty existed to administer the construction loan for the benefit of parties other than the borrower-developer.

19. In Enumerations 45 and 46, appellants have excised portions of the charge instructing the jury on the prerequisites to perfecting a contractor's lien as set forth in Code Ann. § 67-2002 and as stated in *Oglethorpe Sav. &c. Co. v. Morgan,* supra, and further instructing as to the time a lien attaches. It is submitted that the charge was incomplete as it did not instruct the jury as to principles of law regarding the priority of interests in a contest between the grantee of a deed to secure debt and a contractor's lien.

A review of the entire charge shows that the jury was instructed on this subject.

*Judgment reversed. Bell, C. J., and Birdsong, J., concur.*

ARGUED JUNE 26, 1978 — DECIDED DECEMBER 1, 1978 — REHEARINGS DENIED DECEMBER 20, 1978 —

*Smith, Cohen, Ringel, Kohler & Martin, John A. Howard, David K. Whatley, Burnside, Dye, Miller & Bowen, A. Montague Miller, Thomas W. Tucker,* for appellants.

*Harland, Cashin, Chambers, Davis & Doster, Harry L. Cashin, Jr., Simuel F. Doster, Jr., Thomas J. Venker, Henry M. Hatcher, Jr.,* for appellee.