**In the matter of DURANGO GEORGIA PAPER COMPANY, Durango Georgia Converting Corporation, Durango Georgia Converting, LLC, Debtors.**

**No. 02–21669.**

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

March 31, 2003.

James E. Stein, St. Marys, GA, for Plaintiff/Movant.

Michael M. Beal, Columbia, SC, for Defendant/Respondent.

### MEMORANDUM AND ORDER ON MOTION OF J. WALTER CONSTRUCTION, INC., TO FILE NOTICE OF ACTION ON LIEN

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

On October 29, 2002, various creditors of Durango Georgia Paper Company ("Durango") filed a Chapter 7 involuntary bankruptcy petition under 11 U.S.C. § 303 against Durango. Durango consented to the involuntary petition and moved for mandatory conversion of the case to one under Chapter 11. On November 19, 2002, Durango Georgia Converting Corporation and Durango Georgia Converting, LLC, filed voluntary petitions under Chapter 11. The three cases are being jointly administered.

Prior to the filing, on October 18, 2002, J. Walter Construction Company, Inc. ("Movant") had filed suit against Durango seeking to recover funds for services rendered and seeking to enforce a lien pursuant to the Georgia mechanics and materialman's lien statute. On November 20, 2002, Movant filed the instant motion requesting permission of this Court to "File Notice of Action on Lien" in the Superior Court of Camden County as required under O.C.G.A. § 44–14–361.1(a)(3). Durango objects. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157(b).

Upon bankruptcy filing, an automatic stay is in effect by operation of law as provided in § 362(a):

(a) Except as provided in subsection (b) of this section, a petition filed under section ... 303 ... of this title ... operates as a stay, applicable to all entities, of–

. . .

(4) any act to create, perfect, or enforce any lien against property of the estate[.]

§ 362(a)(4).

Section 362(b), which identifies certain exclusions from the automatic stay, provides in pertinent part:

(b) The filing of a petition under section ... 303 of this title ... does not operate as a stay–

. . .

(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an

interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title . . . .

§ 362(b)(3). Accordingly, acts to "perfect" are not stayed, whereas acts to "create" or to "enforce" are stayed.

The act in issue is one required by the Georgia Code, which mandates that providers of services or material provided for the purpose of improving real property "shall each have a special lien" on that property. O.C.G.A. § 44–14–361(a). Each such lien "may attach to the real estate for which the labor, services, or materials were furnished if they are furnished at instance of the owner, contractor, or some person acting for the owner or contractor." *Id.* § 44–14–361(b). Such a lien

> attaches from the time the work under the contract is commenced, although it lacks, certainly until it [is recorded], the quality of constructive notice. But one who purchases the property while the work is in progress, with knowledge of the contract and notice of the contractor's claim of lien, though imperfect at the time, must be held to take the property subject to the lien, provided the contract is completed and the lien is declared and enforced within the time and as prescribed by the [Georgia] statute.

*Oglethorpe Sav. & Trust Co. v. Morgan,* 102 S.E. 528, 531, 149 Ga. 787 (1920),

quoted in *Gellis v. B.L.I. Constr. Co.,* 148 Ga.App. 527, 544, 251 S.E.2d 800, 813 (1978); *see also Carl E. Jones Dev., Inc. v. Wilson,* 149 Ga.App. 679, 680, 255 S.E.2d 135, 136 (1979)("[A] lien attaches when a laborer performs work on real property."); *Middle Ga. Lumber Co. v. Hunt,* 186 S.E. 714, 715, 53 Ga.App. 578 (1936) ("[W]here the plaintiff brings suit to enforce its lien, as required by [applicable] statutes, the lien attaches . . . from the date when the materials were furnished.").

These inchoate liens may be "made good" only by complying [1] with the requirements set out in O.C.G.A. § 44–14–361.1:

> (a) To *make good* the liens specified in . . . [O.C.G.A. § ] 44–14–361, they must be *created* and *declared* in accordance with the following provisions, and on failure of any of them the lien shall not be *effective or enforceable:*
>
> (1) A substantial compliance by the party claiming the lien with his contract . . . .
>
> (2) The filing for record of his claim of lien within three months after the completion of the work . . .
>
> (3) The commencement of an action for the recovery of the amount of the party's claim within 12 months from the time the same shall become due. In addition, within 14 days after filing such action, the party claiming the lien shall file a notice with the clerk of the superi-

---

**1.** The Georgia Supreme Court explains that the statutory requirements are to be strictly construed:

> A materialman's lien effectively permits the transfer of liability from the person who actually contracted with the materialman for materials to be used in improving real estate to the owner of the improved property, even though that property owner usually will have no relationship with the materialman, contractual or otherwise. Consequently, we have long recognized that stat-

utes involving materialman's liens must be strictly construed in favor of the property owner and against the materialman.

*Palmer,* 262 Ga. at 29–30, 413 S.E.2d 437 (addressing notice requirement in O.C.G.A. § 44–14–361.1(a)); *see also ATC Sys., Inc. v. Valairco, Inc. (In re Valairco, Inc.),* 9 B.R. 289, 294 (Bankr.D.N.J.1981) (noting that mechanics and materialmen's liens arise through statutory law and "have no independent recognition in equity being in derogation of the common law").

or court of the county wherein the subject lien was filed . . . .

O.C.G.A. § 44–14–361.1(a)(1), (2), (3) (emphases added); *see also, e.g., Palmer v. Duncan Wholesale, Inc.*, 262 Ga. 28, 29–30, 413 S.E.2d 437, 438–39 (1992); *Calhoun/Johnson Co. v. Houston Family Trust No. 1*, 236 Ga.App. 793, 795, 513 S.E.2d 759, 761 (1999); *Ragsdale v. Chiu (In re Harbor Club, L.P.)*, 185 B.R. 959, 963 (Bankr.N.D.Ga.1995) (noting O.C.G.A. § 44–14–361.1(a)(3)'s "mandatory procedure" for providing notice). Thus, filing a lawsuit and filing the 14–day notice are essential elements of "creating" and "declaring" liens.

Here, Movant failed to file notice of the action, post-petition, within 14 days of filing its pre-petition action, as required by O.C.G.A. § 44–14–361.1(a). As a result, Movant did not complete the statutory requirements to "make good" its lien—that is, to "create" and "declare" it so as to make it "effective or enforceable." The Bankruptcy Code provides, however, for extending the time for continuing a civil action on a claim against the debtor in a nonbankruptcy court to a date "30 days *after notice of the termination or expiration of the stay* under section 362 . . . with respect to such claim." 11 U.S.C. § 108(c)(2) (emphasis added). The question is whether or not, in this situation, the filing of such notice was subject to the stay, thus triggering operation of § 108(c)(2) to toll the 14 day limitations period.

Pursuant to the following discussion, I hold that upon the filing of Durango's bankruptcy case, the automatic stay applied to stay any action to "make good" the lien at issue, including the notice filing required under Georgia law, and that accordingly, the extension provided in § 108(c) is applicable.

The automatic stay applies to any act to "create, perfect, or enforce" any lien against property of the estate, *id.* § 362(a)(5), and the applicable exception is limited to acts "to perfect, or to maintain or continue the perfection of" such a lien, *id.* § 362(b)(3). Thus, only acts of perfection are excepted from the scope of the automatic stay. If, therefore, the act that Movant is seeking court permission to undertake is an act to *perfect*, then it was not stayed by operation of § 362(a). If, on the other hand, it is an act either to *create* or to *enforce* a lien, then it was stayed.

Neither O.C.G.A. § 44–14–361 nor § 44–14–361.1 speaks of "perfecting" liens, but rather, of "creating and declaring" liens. In *Hunt, supra*, the Georgia Court of Appeals equates the plaintiff's inchoate claim of lien with the "right to acquire a lien," *Hunt*, 186 S.E. at 715, which suggests that an inchoate lien is only a potential—not actual—lien that attaches retroactively only if the plaintiff brings a suit to enforce its lien and otherwise complies with all statutory requirements and obtains final judgment.

Because the only exception from the automatic stay is for acts to "perfect" a lien, because the inchoate lien is only the "right to acquire a lien," and because one must engage in acts set forth in section O.C.G.A. § 44–14–361.1 in order to "make good" those liens or to "create and declare them," I conclude that those acts have something to do with "creation" and as such constitute more than mere acts of perfection.

Alternatively, if the fact that the inchoate lien, once established, attaches retroactively and is therefore deemed to have been "created" on the date work was performed, then, at minimum, the acts taken under O.C.G.A. § 361.1 to "make good" that lien are in the nature of "enforcement" of a lien. Under this view, an in-

choate lien is "created" on the date work is performed, but without final adjudication of its validity, it never becomes efficacious. It is a hidden, secret lien until the litigation to enforce those inchoate rights is final. Because the only exception from the automatic stay is for acts to perfect a lien, and because one must engage in acts set forth in section O.C.G.A. § 44–14–361.1 in order to "make good" a lien, I conclude that those acts are, at a minimum, acts to "enforce" the hidden lien. They certainly constitute something other than mere acts of perfection.

I recognize that cases in Georgia and elsewhere refer to what I am calling enforcement actions as being acts to "perfect." *See, e.g., Wilson,* 149 Ga.App. at 680, 255 S.E.2d 135 ("[A] lien attaches when a laborer performs work on real property. However, under [the applicable Georgia statute], the lien must be perfected within three months after either the completion of the work or the date materials are furnished and an action to recover the amount of the claim must be instituted within twelve months from the time labor and/or materials were last furnished."). Courts' usage of the word "perfect" in this context, however, does not necessarily have the effect of substantively transforming the provisions of O.C.G.A. § 44–14–361.1 into a perfection statute within the meaning of 11 U.S.C. § 362(b)(3). Instead, it may simply exemplify their effort to use more modern, understandable, or descriptive terms than the more arcane "make good," or "create and declare."

It is significant that O.C.G.A. § 44–14–361.1 does not use the word "perfect," but speaks of "creating," "declaring," or "making good" a lien. Indeed, O.C.G.A. § 44–14–361.1(4), in dispensing with the requirement that the claimant sue the contractor if the contractor has absconded or been declared bankrupt, allows the claimant to *enforce* the lien directly against the property" yet requires filing of the same 14–day notice that is required in O.C.G.A. § 44–14–361.1(3). It thus appears that a lawsuit filed under either section is understood to be an enforcement action and the 14–day notice, which is an essential element, required in order to prevail in the underlying suit, is likewise an enforcement action. The use of the word "perfection" to describe these acts in court decisions does not change the fact that much more is taking place under O.C.G.A. § 44–14–361.1 than the purely ministerial act of perfecting a previously established consensual lien or judgment by filing a financing or continuation statement, both of which are clearly excepted from the stay.

In contrast, the caption of O.C.G.A. § 44–14–367(a) refers to the "voiding" of liens which have not been "perfected." The text of that section provides that if the 14–day notice is not timely filed, the lien may on application be marked void. The question is, then, whether giving the 14–day notice is an act of "enforcement" as implied in O.C.G.A. § 44–14–361.1(4) or an act of "perfection" as implied in the caption to O.C.G.A. § 44–14–367. O.C.G.A. § 1–1–7 answers that question: Descriptive headings in the Code do not "expand" the construction of any Code section. I conclude, therefore, that filing the 14–day notice goes beyond perfection and is an element of creation or enforcement. The contrary view—that it is only a perfection act—would permit a lien creditor not only to file the notice, but to take *all* the actions permitted in O.C.G.A. 44–14–361.1(a), *i.e.,* filing a lien claim, commencing the action and filing the 14–day notice without the permission of the bankruptcy court. Surely 11 U.S.C. § 362 is intended to stay all these acts.

This is a close call and one over which reasonable people may differ. My conclu-

sion is based upon the statutory analysis contained in this Order which tips the scale in favor of the creditor. In so concluding, I am also mindful that the automatic stay has been described as broad and nearly—but not quite—all-encompassing. It has also been described as "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986) (citing congressional history). Violation of the stay can result in very serious consequences, including actual and punitive damages and attorney's fees, *see* 11 U.S.C. § 362(h). The bankruptcy courts in this nation have devoted more than twenty years to zealously guarding the right of debtors and making awards in appropriate cases to punish creditors who push the envelope too far and who engage in acts which violate the fundamental debtor protection created by the automatic stay.

Indeed, it is fair to say that most knowledgeable practitioners, when asked whether an act contemplated by a creditor might violate the automatic stay, are likely to advise their clients—out of an abundance of caution—that it is safer to ask permission than forgiveness, and recommend that they simply file the appropriate motion for relief from stay in a court of competent jurisdiction. To do otherwise risks injury to the client and to the attorney who might otherwise give dangerously erroneous advice. In adopting a hands-off approach to the notice provisions of O.C.G.A. § 44–14–361.1 until filing such a motion, presenting it to this Court, and receiving this Court's permission to take that action, Movant and its counsel are operating with an appropriate level of circumspection and deference to the scope of the automatic stay which is to be broadly construed, and which I construe to bar the further acts otherwise required by O.C.G.A. § 44–14–361.1.

Because the automatic stay prevented Movant from complying with O.C.G.A. § 44–14–361.1, I conclude that Movant's failure to take further action under that statute was tolled under 11 U.S.C. § 108.

## ORDER

Pursuant to the foregoing discussion, IT IS THE ORDER OF THIS COURT that the stay is lifted for the limited purpose of allowing Movant to file a notice of action in the Superior Court of Camden County within thirty (30) days from the date of this Order.